UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| VIRGINIA HERRMANN, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 4:20-cv-00706 |
| v. | ) ) | JURY TRIAL DEMANDED |
| SAM'S EAST, INC. d/b/a SAM'S CLUB #6474, | ) ) ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS
PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM**

# TABLE OF CONTENTS

**Page**

FACTUAL BACKGROUND ……..…………………………………………………………1

ARGUMENT ……………………………………………………………………… 2

I.    DEFENDANT'S MOTION TO COMPEL ARBITRATION SHOULD
    BE DENIED. …………………………………………………………………... 2

    A.    No Arbitration Agreement Exists Between the Parties. …………………... 2

    B.    The Alleged Arbitration Agreement is Unconscionable. ………………… 5

        1.    The Arbitration Clause is Undeniably Adhesive. …………………. 6

        2.    The Arbitration Clause is Unconscionable. ………………………... 7

            a.    The Arbitration Clause is Procedurally Unconscionable.……. 7

            b.    The Arbitration Clause is Substantively Unconscionable. …..8

    C.    The Unilateral Modification Provision Makes the Agreement Illusory. ..…10

II.    DEFENDANT'S ALTERNATIVE MOTION TO DISMISS SHOULD
    BE DENIED. ………………………………………………………………………..10

    A.    Herrmann States a Claim for Breach of Contract. …..……………………10

        1.    The Advertising Circular is not Part of the Parties' Contract. ……...11

        2.    The February 2019 Modification Negated any Prior
            Contrary Terms. ……………………………………………………...12

        3.    The Parties' Course of Dealing Establishes Continued
            Early Shopping Benefits After February 2, 2019. …………………12

        4.    The Amendment Without Notice Provision is Inapplicable. ………13

    B.    Missouri Recognizes Breach of the Implied Covenant of Good
        Faith and Fair Dealing as a Distinct Cause of Action. ………………………15

i

C.      The Economic Loss Doctrine does not Apply. …………………………15

D.      Herrmann States Claims for Fraud and Negligent Misrepresentation. …….16

      1.      Herrmann Alleges Relevant Statements were False
         when Made. …………………………………………………………..16

      2.      Herrmann Pleads Fraudulent Intent. …………………………17

E.      Herrmann Alleges an Unfair Practice. ……………………………………18

F.      The Limitation on Damages in Defendant's February 1, 2020
      Terms and Conditions do not Bind Herrmann. …………………………19

G.      This Court has Personal Jurisdiction Over Sam's Club for a
      Nation-Wide Class Action. ………………………………………………… 20

CONCLUSION...……………………………………………………………..… 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Alpha Portland Indus., Inc.*,
   836 F.2d 1512 (8th Cir. 1988) …………………………………………………… 14

*Applied Energetics v. NewOak Capital*,
   645 F.3d 522 (2d Cir. 2011) …………………………………………………... 3

*Armendariz v. Foundation Health Psychcare Svcs. Inc.*,
   6 P.3d 669, 24 Cal. 4th 83, 99 Cal. Rptr.2d 745 (Cal. 2000) …………………… 6, 7, 8

*Ashanti v. City of Golden Valley*,
   666 F.3d 1148 (8th Cir. 2012) ………………………………………………… 11

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) …………………………………………………………... 6

*Badie v. Bank of America*,
   67 Cal. App.4th 779, 79 Cal. Rptr. 273 (Cal. Ct. App. 1 Dist. 1988) …………………10

*Beneficial Nat'l. Bank v. Payton*,
   214 F. Supp.2d 679 (S.D. Miss. 2001) ...…………………………………………... 5

*Berkley v. Dillard's Inc.*,
   450 F.3d 775 (8th Cir. 2006) ……………………………………………………… 5

*Bishop & Assoc., LLC v. Ameren Corp.*,
   520 S.W.3d 463 (Mo. banc 2017) ……………………………………………… 15

*BJC Health Sys. v. Columbia Cas. Co.*,
   348 F.3d 685 (8th Cir. 2003) …………………………………………………… 12

*Bristol-Meyers Squibb Co. v. Super. Ct. of Cal.*,
   137 S.Ct. 1773 (2017) …………………………………………………… 20, 21

*Bruce Martin Construction, Inc. v. CTB, Inc.*,
   735 F.3d 750 (8th Cir. 2013) …………………………………………………… 16

*Cody v. Hillard,*
  304 F.3d 767 (8th Cir. 2002) …………………………………………………… 13

*Cook v. Gen. Nutrition Corp.,*
  2017 WL 4340664 (W.D. Pa. Sept. 29, 2017) …………………………………… 14, 15

*Dannix Painting, LLC v. Sherwin-Williams Co.,*
  732 F.3d 902 (8th Cir. 2013) …………………………………………………….. 15

*In re Dicamba Herbicides Litigation,*
  359 F. Supp.3d 711 (E.D. Mo. 2019) …………………………………………….. 20

*Discover Bank v. Superior Ct.,*
  113 P.3d 1000, 36 Cal.4th 148, 30 Cal.Rptr.3d 76 (2005) ………………………… 6

*Eaton v. Ad Astra Recovery Svcs., Inc.,*
  80 F.Supp.2d 973 (E.D. Mo. 2015) .……………………………………………... 5

*Eggleton v. Plasser & Theurer Export Von Banhbaumaschinen Gesellschaft, MBH,*
  495 F.3d 582 (8th Cir. 2007) …………………………………………………… 5

*Frye v. Speedway Chevrolet Cadillac,*
  321 S.W.3d 249 (Mo. Ct. App. W.D. 2010) …………………………………… 14

*Geoffroy v. Wash. Mut. Bank,*
  484 F.Supp.2d 1115 (S.D. Cal. 2007) ……………………………………............ 9

*Goldman, Sachs & Co. v. City of Reno,*
  747 F.3d 733 (9th Cir. 2014) …………………………………………………… 3

*Haines v. St. Charles Speedway, Inc.,*
  874 F.2d 572 (8th Cir. 1989) …………………………………………………… 19

*Hammarquist v. United Cont'l Holdings, Inc.,*
  809 F.3d 946 (7th Cir. 2016) …………………………………………………… 14

*Hammarquist, v. United Cont'l Holdings, Inc.,*
  2015 WL 1343823 (N.D. Ill., Mar. 20, 2015) ………………………………… 14

*Heartland Medical, LLC v. Express Scripts, Inc.,*
  2018 WL 4216669 (E.D. Mo. Sept. 5, 2018) ……………………………………... 16

*Hill v. Lincoln Property Co.*,
   2011 WL 65929 (E.D. Mo. Jan. 10, 2011) …………………………………………….. 19

*Howard v. Ferrellgas Partners*,
   748 F.3d 975 (10th Cir. 2014) ……………………………………………………... 3

*Ingle v. Circuit City Stores, Inc.*,
   328 F.3d 1165 (9th Cir. 2003) …………………………………………………….. 9

*ITT Comm. Finance Corp. v. Mid-America Marine Supply Corp.*,
   854 S.W.2d 371 (Mo. banc 1993) ………………………………………………… 18

*Johnsen v. Honeywell Int'l Inc.*,
   2015 WL 631361 (E.D. Mo. Feb. 12, 2015) …………………………………………… 16

*Karmilowicz v. Hartford Finan. Svcs. Group, Inc.*,
   494 Fed Appx. 153 (2d Cir. 2012) …………………………………………………... 14

*Keymer v. Mgt. Recruiters Intern., Inc.*,
   169 F.3d 501 (8th Cir. 1999) ……………………………………………………… 2

*Krumm v. Kittrich Corp.*,
   2019 WL 6876059 (E.D. Mo. Dec. 17, 2019) ……………………………………… 21

*Lagen v. United Cont'l Holdings, Inc.*,
   774 F.3d 1124 (7th Cir. 2015) ……………………………………………………… 14

*Lagen v. United Cont'l Holdings, Inc.*,
   2014 WL 258756 (N.D. Ill. Jan. 23, 2014) ……………………………………… 14

*Lamps Plus, Inc. v. Varela*,
   139 S.Ct. 1407 (2019) ……………………………………………………………… 2

*Lau v. Mercedes-Benz USA, LLC*,
   2012 WL 370557 (N.D. Cal. Jan. 31, 1012) ……………………………………… 6

*Long v. Fidelity Water Sys., Inc.*,
   2000 WL 989914 (N.D. Cal. May 26, 2000) ..……………………………………….. 4

*Magno v. College Network, Inc.*,
   1 Cal.App.5th 277, 204 Cal.Rptr.3d 829 (Cal. Ct. App. 4 Dist. 2016) ………………10

*Mattes v. ABC Plastics, Inc.*,
323 F.3d 695 (8th Cir. 2003) …………………………………………………… 11

*State ex rel. McKeage v. Cordonnier*, 357 S.W.3d 597,
(Mo. banc 2012) …………………………………………………………………... 5 – 6

*MEA Finan. Ent., LLC v. Fiserv Solutions, Inc.*,
2013 WL 12155467 (W.D. Mo. Oct. 16, 2013) …………………………………… 16

*Milliner v. Bock Evans Financial Counsel, Ltd.*,
114 F.Supp.3d 871 (N.D. Cal. 2015) ……………………………………………… 6

*Molock v. Whole Foods Market Group, Inc.*,
952 F.3d 293 (D.C. Cir. 2020) ……………………………………………… 20, 21

*Mussat v. Iqvia, Inc.*,
953 F.3d 441 (7th Cir. 2020) …………………………………………………... 20

*Nat. Fed. of the Blind v. The Container Store*,
904 F.3d 70 (1st Cir. 2018) ……………………………………………………... 4

*Nestle Purina Petcare Co. v. Blue Buffalo Co. Ltd.*,
129 F.Supp.3d 787 (E.D. Mo. 2015) …………………………………………… 16

*Net Global Marketing, Inc. v. Dialtone, Inc.*,
217 Fed. Appx. 598 (9th Cir. 2007) …………………………………………….. 8, 9

*Newton v. American Debt Svcs., Inc.*,
549 Fed. Appx. 692 (9th Cir. 2013) …………………………………………... 6

*Oldham's Farm Sausage Co. v. Salco, Inc.*,
633 S.W.2d 177 (Mo. Ct. App. W.D. 1982) …………………………………… 20

*OmegaGenesis Corp. v. Mayo Found. for Med. Educ. & Research*,
851 F.3d 800 (8th Cir. 2017) …………………………………………………… 17

*OS33 v. Centurylink Communications, L.L.C.*,
350 F. Supp.3d 807 (E.D. Mo. 2018) ………………………………………….. 16

*Patrick v. Altria Group Distribution*,
570 S.W.3d 138 (Mo. Ct. App. W.D. 2019) …………………………………… 14

*Penilla v. Westmont Corp.*,
    3 Cal.App.5th 205, 207 Cal. Rptr.3d 473 (Cal. Ct. App. 2 Dist. 2016) ……………… 6

*Plummer v. McSweeney*,
    941 F.3d 341 (8th Cir. 2019) …………………………………………………… 8

*Prewitt v. Numismatic Funding Corp*.,
    745 F.2d 1175 (8th Cir. 1984) …………………………………………………… 13

*Rosenfeld v. Boniske*,
    445 S.W.3d 81 (Mo. Ct. App. E.D. 2014) ……………………………………… 12

*Saey v. Xerox Corp.*,
    31 F. Supp. 2d 692 (E.D. Mo. 1998) …………………………………………… 19

*Sears Roebuck and Co. v. Avery*,
    593 S.E.2d 424,163 N.C. App. 207 (N.C. Ct. App. 2004) ……………………………10

*Sheehan v. Northwestern Mut. Life Ins. Co.*,
    44 S.W.3d 389 (Mo. Ct. App. E.D. 2001) …..……………………………………… 5

*Shockley v. PrimeLending*,
    929 F.3d 1012 (8th Cir. 2019) ………………………........................................ 2, 4, 5

*Smith v. Bayer Corp*.,
    564 U.S. 299 (2011) …………………………………………………………… 21

*Solis v. AT & T Mobility LLC*,
    2015 WL 6739141 (E.D. Mo. Nov. 3, 2015) ...…………………………………... 5

*Topchian v. JPMorgan Chase Bank, N.A.*,
    760 F.3d 843 (8th Cir. 2014) …………………………………………………… 18

*Trimble v. Pracna*,
    167 S.W.3d 706 (Mo. banc 2005) ……………………………………………… 18

*Trompeter v. Ally Financial, Inc.*,
    914 F.Supp.2d 1067 (N.D. Cal. 2012) …………………………………………... 6

*Trotter's Corp. v. Ringleader Restaurants, Inc.*,
    929 S.W.2d 935 (Mo. Ct. App. E.D. 1996) …………………………………… 18

*In re Unisys Corp. Retiree Med. Ben. ERISA Litig.*,
    58 F.3d 896 (3d Cir. 1995) …………………………………………………….. 14

*White v. Steak N. Shake Inc.*,
    2020 WL 1703938 (E.D. Mo. Apr. 8, 2020) …………………………………… 21

*Winfrey v. Bridgestone/Firestone, Inc.*,
    205 F.3d 1349 (8th Cir. 1999) ……………………………………………….. 5

*World Enterprises, Inc. v. Midcoast Aviation Servs., Inc.*,
    713 S.W.2d 606 (Mo. Ct. App. E.D. 1986) …………………………………… 20

*Zolman v. Semo Produce, Inc.*,
    875 S.W.2d 605 (Mo. Ct. App. S.D. 1994) …………………………………… 13

**Statutes**

9 U.S.C. § 4 …………………………………………………………………… 2

CAL. CIV. CODE § 1670.5(a) …………………………………………………… 6

**Regulations**

MO. CODE REGS. ANN. tit. 15, § 60-8.040(1) …………………………………… 18

MO. CODE REGS. ANN. tit. 15, § 60-8.050(1) …………………………………… 18

MO. CODE REGS. ANN. tit. 15, § 60-8.060(1) …………………………………… 18

MO. CODE REGS. ANN. tit. 15, § 60-8.070(1) …………………………………… 18

MO. CODE REGS. ANN. tit. 15, § 60-8.080 …………………………………… 18

**Rules**

FED. R. CIV. P. 12(b)(6) ………………………………………………………… 11, 16

**Secondary Authorities**

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 (1971) ..……………………… 5

The Court should deny defendant Sam's East, Inc.'s ("Sam's Club") motion to compel arbitration because no enforceable arbitration agreement exists between the parties.  Sam's Club's alternative motion to dismiss should also be denied because plaintiff Virginia Herrmann's Complaint states a claim upon which relief can be granted.

## FACTUAL BACKGROUND

Virginia Herrmann seeks redress for a widespread consumer fraud potentially affecting over 150,000 Sam's Club members.  *Notice of Removal*, Doc. 1, ¶ 13.  Improper membership upgrade charges collected by Defendant during the class period potentially exceed $8.25 million.  *Id*. ¶¶ 3, 13.

With nearly 600 locations in 46 states generating $60 billion in sales in 2019, defendant Sam's Club ranks second in sales among membership-only retail warehouse clubs in the United States.  *Petition*, ¶ 9.  Owned and operated by Walmart Inc., Sam's maintains at least 18 locations in Missouri alone.  *Id*. ¶¶ 5, 9.

When Herrmann renewed her membership on February 2, 2019, Defendant offered three tiers: a Savings Membership for $45, a Business Membership for the same amount and a $100 Sam's Plus Membership.  *Id*. ¶ 12.  Business Membership benefits included the ability to shop as early as 7:00 a.m., before regular hours.  *Id*. ¶ 14.  Herrmann routinely shopped early to avoid larger crowds.  *Id*.

On July 5, 2019, Defendant's cashier refused to allow Herrmann to check out before 9:00 a.m. unless she upgraded to a Plus Membership.  *Id*. ¶ 15.  Herrmann paid $34.35 to upgrade to a Plus to retain the same benefit she had paid $45 to obtain five months earlier.  *Id*. ¶ 17.  Herrmann observed another shopper being told the same during

1

a subsequent visit.  *Id*. ¶ 18.  She later noted greeters simply stopped checking membership cards for early shopping eligibility, and a Sam's employee informed her the store was open to all members at 7:00 a.m., regardless of membership level.  *Id*. Defendant unnecessarily induced Herrmann to pay extra for a benefit she already had and/or did not need.  Sam's Club admits over 150,000 members paid to upgrade to a Plus Membership during the same year as Herrmann.  Doc. 1, at 4, ¶ 13.

Herrmann filed this putative class action asserting contractual, tort and consumer fraud claims.  Defendant's motion to compel arbitration or dismiss should be denied.

## ARGUMENT

## I.   DEFENDANT'S MOTION TO COMPEL ARBITRATION SHOULD BE DENIED.

"Arbitration is a matter of contract law, and favored status notwithstanding, parties cannot be compelled to arbitrate unless they have contractually agreed to be bound by arbitration."  *Shockley v. PrimeLending*, 929 F.3d 1012, 1017 (8th Cir. 2019).  Courts "apply ordinary state law contract principles to decide whether parties have agreed to arbitrate a particular matter."  *Keymer v. Mgt. Recruiters Intern., Inc.*, 169 F.3d 501, 504 (8th Cir. 1999) (citation omitted).

### A.   No Arbitration Agreement Exists Between the Parties.

A court may only compel arbitration "upon being satisfied that the making of the agreement or the failure to comply therewith is not at issue."  9 U.S.C. § 4.  The "foundational FAA principle" underscoring all arbitration decisions is that arbitration "is a matter of consent, not coercion."  *Lamps Plus, Inc. v. Varela*, 139 S.Ct. 1407, 1415 (2019).  There is therefore no presumption an arbitration agreement exists:

2

> Everyone knows the Federal Arbitration Act favors arbitration.  But before
> the Act's heavy hand in favor of arbitration swings into play, the parties
> themselves must agree to have their disputes arbitrated . . . . [E]ven under
> the FAA it remains a "fundamental principle" that "arbitration is a matter of
> contract," not something to be foisted on the parties at all costs.

*Howard v. Ferrellgas Partners*, 748 F.3d 975, 977 (10th Cir. 2014); *see Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014) ("If the parties contest the *existence* of an arbitration agreement, the presumption in favor of arbitrability does not apply."); *Applied Energetics v. NewOak Capital*, 645 F.3d 522, 526 (2d Cir. 2011).

The terms Herrmann renewed on February 2, 2019 contained no arbitration clause. *See* Doc. 6-4, Ex. C (the "2019 Terms and Conditions").  Defendant fails to allege any arbitration agreement during the 12 months following Hermann's 2019 renewal.  *See* Doc. 6-4, Ex. C at 8 ("The annual membership fee covers a 12-month period.").  Defendant instead bases its motion to compel arbitration on its change to the terms for members "continuing [their] Sam's Club membership beyond February 1, 2020."  Doc. 6-5, Ex. D at 21; *see* Doc. 6 at 5.[1]  *See* Doc. 6-6, Ex. E at 11 – 12, § X(A), (C).

Defendant's unsupported assertion notwithstanding, Herrmann indisputably did not continue her membership beyond February 1, 2020.  *See* Doc. 6 at 5; *Herrmann Dec*. ¶ 2.  The 2019 Terms and Conditions rendered Herrmann's February 2, 2019 renewal effective for only twelve months.  *See* Doc. 6-4, Ex. C, at 8.  Herrmann declined to participate in Defendant's "Auto Renew Program" and never renewed subsequent to

---

[1]     Defendant claims it "notified" members of its unilateral imposition of arbitration by burying fine print referring members to a website on the next-to-last page of a 39-page throw-away advertisement prominently featuring images of chocolate-covered strawberries, Miami palm trees, lobster tail dinners and jewelry.  *See* Doc. 6-5, Ex. D.

February 2, 2019 at a store or on-line.  *See* Doc. 6-4, Ex. C at 9; *Herrmann Dec*. ¶ 2.  By its terms, the advertisement Defendant claims it mailed acknowledges the new terms would only apply to members continuing their membership <u>beyond</u> February 1, 2020. *See* Doc. 6-5, Ex. D at 20.  Regardless, Herrmann never received it.  *Herrmann Dec.* ¶ 4.

Defendant sent Herrmann an e-mail at 10:36 a.m. on Saturday, February 1, 2020 discussing arbitration.  *Herrmann Dec.*, ¶ 6, Ex. 1.  It states "we've updated our Terms & Conditions . . . effective February 1, 2020.  The changes include a class action waiver and mandatory arbitrations provision . . ."  *Id.*  Defendant omits the e-mail and her responses from its submission.  Herrmann did not see the e-mail on February 1.  *Herrmann Dec.* ¶ 6.  Once she did, on February 6 she requested her membership be canceled, though it already lapsed because she neither participated in Defendant's "Auto Renew Program" nor renewed at a store or on-line.  *Herrmann Dec.*, ¶ 7, Ex. 2.  A few hours later she e-mailed clarifying the new terms were unacceptable and that she did not seek a refund for a 2020 membership renewal because she never in fact renewed.  *Id.* ¶ 9, Ex. 3.

"The absence of proof of unequivocal acceptance of an agreement to arbitrate renders the provision unenforceable."  *Shockley*, 929 F.3d at 1020; *see Long v. Fidelity Water Sys., Inc.*, 2000 WL 989914, *3 (N.D. Cal. May 26, 2000) (absent consent, clause unenforceable regardless of a unilateral "change of terms" provision).  A plaintiff "could not have accepted the terms of a contract to arbitrate that was never communicated to them."  *Nat. Fed. of the Blind v. The Container Store*, 904 F.3d 70, 82 (1st Cir. 2018).  Herrmann did not learn of Defendant's effort to impose an arbitration agreement until after February 1, 2019 and immediately objected.  *Herrmann Dec.* ¶¶ 5 – 9.  Defendant

4

"carries the burden to prove a valid and enforceable agreement," *Shockley*, 929 F.3d at

1017, but no evidence of acceptance exists.  Only contrary evidence exists.

Defendant's cases do not apply because those plaintiffs continued their contractual

relationship after imposition of an arbitration agreement, whereas Herrmann's

membership expired before the agreement became effective.  *See Berkley v. Dillard's

Inc.*, 450 F.3d 775, 778 (8th Cir. 2006); *Winfrey v. Bridgestone/Firestone, Inc.*, 205 F.3d

1349 (8th Cir. 1999); *Solis v. AT & T Mobility LLC*, 2015 WL 6739141 (E.D. Mo. Nov.

3, 2015); *Beneficial Nat'l. Bank v. Payton*, 214 F. Supp.2d 679 (S.D. Miss. 2001).[2]

Herrmann indisputably did not "continu[e] [her] Sam's Club membership beyond

February 1, 2020 . . ."  Doc. 6-6, Ex. D at 20.  No agreement to arbitrate this case exists.

B.     **The Alleged Arbitration Agreement is Unconscionable.**

Even if had been agreed to, the arbitration clause is unconscionable.  California

law governs.  *See* Doc. 6-6, Ex. E at 11 – 12, § X(C); *Eggleton v. Plasser & Theurer

Export Von Banhbaumaschinen Gesellschaft, MBH*, 495 F.3d 582, 585 (8th Cir. 2007)

(District courts "must apply the choice-of-law rules of the forum state."); *State ex rel.*

---

[2]     Missouri law controls in event of conflict.  The 2019 Terms and Conditions
include an Arkansas choice of law provision.  *See* Doc. 6-6, Ex. C, at 13.  Where a choice
of law clause "is contained in an 'adhesion' contract . . . drafted unilaterally by the
dominant party and then presented on a 'take-it-or-leave-it' basis to the weaker party who
has no real opportunity to bargain about its terms," the forum "will refuse to apply any
choice-of-law provision they may contain if to do so would result in substantial injustice
to the adherent."  RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187, cmt. b; *see Eaton
v. Ad Astra Recovery Svcs., Inc.*, 80 F.Supp.2d 973, 977 n.1 (E.D. Mo. 2015), *citing*
RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 (1971).  Arkansas' only
relationship to the parties is as Defendant's place of incorporation.  *Complaint*, ¶ 5.
Missouri has the more significant relationship to the parties and this case.  *See Sheehan v.
Northwestern Mut. Life Ins. Co.*, 44 S.W.3d 389, 396 (Mo. Ct. App. E.D. 2001).

*McKeage v. Cordonnier*, 357 S.W.3d 597, 600 (Mo. banc 2012) ("A valid choice of law provision in a contract binds the parties.").

California law renders Defendant's unilateral arbitration clause unconscionable and thus unenforceable under CAL. CIV. CODE § 1670.5(a).  In the wake of *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) (abrogating *Discover Bank v. Superior Ct.*, 113 P.3d 1000, 36 Cal.4th 148, 30 Cal.Rptr.3d 76 (2005)), California courts continue applying an unconscionability analysis to consumer arbitration agreements.  *Newton v. American Debt Svcs., Inc.*, 549 Fed. Appx. 692 (9th Cir. 2013); *Milliner v. Bock Evans Financial Counsel, Ltd.*, 114 F.Supp.3d 871 (N.D. Cal. 2015); *Trompeter v. Ally Financial, Inc.*, 914 F.Supp.2d 1067 (N.D. Cal. 2012); *Penilla v. Westmont Corp.*, 3 Cal.App.5th 205, 207 Cal. Rptr.3d 473 (Cal. Ct. App. 2 Dist. 2016); *Lau v. Mercedes-Benz USA, LLC*, 2012 WL 370557 (N.D. Cal. Jan. 31, 1012).

> 1.   The Arbitration Clause is Undeniably Adhesive

"Unconscionability analysis begins with an inquiry into whether the contract is one of adhesion." *Armendariz v. Foundation Health Psychcare Svcs. Inc.*, 6 P.3d 669, 24 Cal. 4th 83, 99 Cal. Rptr.2d 745 (Cal. 2000).  "The term contract of adhesion signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Id*. (citation omitted).

"[T]he times in which consumer contracts were anything other than adhesive are long past." *Concepcion*, 563 U.S. at 346 – 347.  Defendant's clause easily qualifies. Defendant conditioned continued membership on accepting a standardized agreement

foisted on members with no or little notice, no opportunity to negotiate and without even providing the language itself.  *See* Doc. 6-5, Ex. D.  Defendant instead directed members to scour a website where they could find the arbitration clause buried in 31 scintillating pages of terms and conditions.  *See id.* at 21; Doc. 6-6, Ex. E, at 10 – 11.

### 2.    The Arbitration Clause is Unconscionable

California law requires both substantive and procedural unconscionability, though not in the same degree, to render a contract unenforceable.  *See Armendariz*, 6 P.3d at 690.  Procedural unconscionability focuses "on 'oppression' or 'surprise' due to unequal bargaining power," while substantive unconscionability focuses "on 'overly harsh' or 'one-sided' results."  *Id*.  "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa."  *Id*.

### a.    *The Arbitration Clause is Procedurally Unconscionable.*

Strong procedural unconscionability exists.  Defendant, an international company with $60 billion in annual sales, possesses bargaining power far greater than its members.  Defendant allowed no negotiation and conditioned continued membership on acceptance of its terms.  Herrmann never had the chance to negotiate, sign, read or even know of the agreement before it purportedly became effective.  *Herrmann Dec.* ¶¶ 5 – 6.

Defendant chose not to send the arbitration language, putting the onus on Herrmann to find it on-line amidst 31 pages of terms.  *See* Doc. 6-6, Ex. E, at 10 – 11.  Yet Defendant could have sent the language in a manner giving Herrmann reasonable opportunity to read and react.  If it could mail a 39-page advertisement burying a

reference to the language in a fraction of a page, it could have mailed all 31 pages of terms, or just the arbitration language.  The same is true for the e-mail Defendant sent the day before it purportedly became effective.  Herrmann only had – at most – between 10:36 a.m. and midnight on Saturday, February 1 to act, and only if she read the e-mail shortly after it was sent.  *See Plummer v. McSweeney*, 941 F.3d 341 (8th Cir. 2019).

Defendant's tactics were intentional, heavy-handed and oppressive.

b.      *The Arbitration Clause is Substantively Unconscionable.*

In determining substantive unconscionability, "California courts look beyond facial neutrality and examine the actual effects of the challenged provision."  *Net Global Marketing, Inc. v. Dialtone, Inc.*, 217 Fed. Appx. 598, 601 (9th Cir. 2007).  Given extensive procedural unconscionability, only minimal substantive unconscionability must be shown.  *See Armendariz*, 6 P.3d at 690.

An abundance exists.  Under California law, the arbitration clause is substantively unconscionable because the JAMS fee is disproportionate to the claim amount, the class waiver renders litigation expenses excessive relative to the amount in controversy, the unilateral amendment clause is per se substantively unconscionable and the JAMS rules make it possible Herrmann will be ordered to arbitrate in an unforeseen locale.

The $250 JAMS filing fee dwarfs the amount in controversy of $34.35 to $55 per member, a disparity of nearly 500%, rendering the arbitration clause substantively unconscionable.  *See* Ex. 4.  This is true because the class action waiver in the arbitration clause prevents consumers from seeking cost-effective redress.  The agreement provides "YOU AGREE THAT ANY ARBITRATION WILL TAKE PLACE ONAN

8

INDIVIDUAL BASIS; CLASS ARBITRATIONS AND CLASS ACTIONS ARE NOT
PERMITTED . . . ."  Doc. 6-6, Ex. E at 11, § X(A).

The arbitration clause's class action waiver deprived Herrmann and class members
of the ability to leverage other litigation costs and expenses across the class.  Even
minimal costs would exceed the amount at issue for an individual arbitration proceeding,
a concern absent in a class proceeding given numerosity.  While the filing fee Herrmann
paid to sue exceeds the JAMS fee, she paid that fee for over 150,000 similarly situated
members who potentially paid millions in unnecessary membership upgrades.

Defendant's claimed ability to alter the terms and conditions unilaterally and
without notice also renders the arbitration substantively unconscionable under California
law.  *See* Doc. 6-4, Ex. C, at 8.  Where the party seeking to enforce an arbitration
agreement "grant[s] itself the sole authority to amend the arbitration provision without
notice, compounded by the fact that [the] contract is adhesive in the first instance, the
provision is rendered substantively unconscionable."  *Geoffroy v. Wash. Mut. Bank*, 484
F.Supp.2d 1115, 1123 (S.D. Cal. 2007); *see Ingle v. Circuit City Stores, Inc.*, 328 F.3d
1165, 1179 (9th Cir. 2003) (unilateral modification substantively unconscionable); *Net
Global Marketing*, 217 Fed. Appx. at 602 (unilateral right to modify arbitration clause
allowing possibility of asymmetrical agreement ruled substantively unconscionable).

Finally, Defendant's arbitration clause allows for the possibility that the arbitrator
could rule that the hearing must take place at a location inconvenient to Plaintiff.

> The arbitrator will conduct hearings . . . by teleconference or
> videoconference . . . unless the arbitrator determines upon request by you or
> by us that an in-person hearing is appropriate.  Any in-person appearances

> will be held at a location which is reasonably convenient to both parties
> with due consideration of their ability to travel and other pertinent
> circumstances.

Doc 6-6, Ex. E at 11, § X(a).  The next sentence creates an exception swallowing the

rule: "If the parties are unable to agree on a location, such determination should be made

by JAMS or by the arbitrator . . . and will be final and binding."  *Id*. California law deems

such terms substantively unconscionable.  *See, e.g. Magno v. College Network, Inc.*, 1

Cal.App.5th 277, 289, 204 Cal.Rptr.3d 829, 838 – 839 (Cal. Ct. App. 4 Dist. 2016).

### C.    The Unilateral Modification Provision Makes the Agreement Illusory.

Closely related to the substantive unconscionability analysis, California law deems

arbitration agreements effectuated by a unilateral modification provision illusory.  *See*

*Badie v. Bank of America*, 67 Cal. App.4th 779, 797, 79 Cal. Rptr. 273, 285 (Cal. Ct.

App. 1 Dist. 1988); *see also Sears Roebuck and Co. v. Avery*, 593 S.E.2d 424, 433 – 434,

163 N.C. App. 207, 220 – 222 (N.C. Ct. App. 2004).  The facts here are stronger than in

*Badie*, where the bank at least mailed copies of the arbitration agreement to its customers.

## II.    DEFENDANT'S ALTERNATIVE MOTION TO DISMISS SHOULD BE DENIED.

### A.    Herrmann States a Claim for Breach of Contract.

Plaintiff relies on two documents not attached to the Complaint:  the 2019 Terms

and Conditions (Doc. 6-4, Ex. C) and an advertisement Defendant calls a "membership

brochure" dated February 2018 (Doc. 6-3, Ex. B) (the "Advertising Circular").

Herrmann acknowledges her Complaint embraces the 2019 Terms and Conditions and

does not object to their consideration.  Herrmann does not believe she received or ever

saw the Advertising Circular before Defendant filed its Motion.  *Herrmann Dec.*, ¶ 3.
She has had no opportunity to test its authenticity and disputes its contractual effect.

Defendant's dismissal motion fails because (1) the Advertising Circular was not
part of the parties' contract, (2) the February 2019 renewal modified contract terms to
supplant the Advertising Circular, (3) the parties' course of dealing runs contrary to
Defendant's interpretation and (4) the amendment-at-will provision is inapplicable.

1.    The Advertising Circular is not Part of the Parties' Contract.

The Advertising Circular is not a membership agreement.  *See* Doc. 6-3, Ex. B.
There is no place for members to sign.  *Id.*  Defendant makes no showing of when, how
or whether the Advertising Circular was distributed.  Herrmann does not believe she
received it.  *Herrmann Dec.*, ¶ 3.  The 2019 Terms and Conditions do not incorporate it
or mention its existence.  *See* Doc. 6-4, Ex.  Defendant cites no case suggesting it would
have contractual effect and fails to assert or establish the non-existence of other versions.

Herrmann's Complaint neither references nor embraces the Advertising Circular.
It thus constitutes material outside the pleading and cannot be considered without
converting Defendant's motion to one for summary judgment.  FED. R. CIV. P. 12(b).
"Though matters outside the pleading may not be considered in deciding a Rule 12
motion to dismiss, documents necessarily embraced by the complaint are not matters
outside the pleading."  *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir.
2012).  Contracts "upon which [a] claim rests are . . . evidently embraced by the
pleadings."  *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n. 4 (8th Cir. 2003).

Conversion at this early juncture without discovery would be inappropriate. *See BJC Health Sys. v. Columbia Cas. Co.*, 348 F.3d 685, 687 – 688 (8th Cir. 2003) (contracts attached to dismissal motion outside pleadings, plaintiff improperly denied discovery). Herrmann has had no opportunity to discover whether alternate versions of the Advertising Circular exist or test the document's authenticity. Regardless, dispute issues of material fact exist concerning the terms of the parties' contract regarding whether Herrmann had early shopping benefits as of February 2, 2019.

2.     The February 2019 Modification Negated any Prior Contrary Terms.

Even if the Advertising Circular had contractual force in February 2018, the February 2, 2019 modification extending Herrmann's membership eradicated the Advertising Circular's terms. The 2019 Terms and Conditions Defendant admits were in force in February 2019 contain no restriction on early shopping. *See* Doc. 6-4, Ex. C. The 2019 Terms and Conditions drafted by Defendant also contain a merger clause:

> These Membership Terms and Conditions constitute the entire agreement between the parties with respect to the subject matter hereof and supersedes all prior or contemporaneous understandings or agreements, written or oral, regarding such subject matter.

*Id*. at 12, § X. Such clauses are effective under Missouri law. *See Rosenfeld v. Boniske*, 445 S.W.3d 81, 88 (Mo. Ct. App. E.D. 2014).

3.     The Parties' Course of Dealing Establishes Continued Early Shopping Benefits After February 2, 2019.

The 2019 Terms and Conditions do not discuss early shopping, but Herrmann routinely shopped early from at least the beginning of 2019 until Defendant unilaterally

withdrew them in July 2019.  *Complaint*, ¶¶ 13 – 15.  Her doing so establishes both a course of dealing before February 2, 2019 and a subsequent course of performance.

"A court should look to course of dealing to supplement or qualify the terms of an agreement where the parties are or should be aware of that course of dealing."  *Prewitt v. Numismatic Funding Corp.*, 745 F.2d 1175 (8th Cir. 1984).  "A course of dealing between the parties may explain or supplement an agreement's meaning in matters left ambiguous by its express language."  *Cody v. Hillard*, 304 F.3d 767, 778 (8th Cir. 2002). "Whether there exists a course of dealing between parties that discloses a course of performance that will establish or modify terms of a contract is a question of fact." *Zolman v. Semo Produce, Inc.*, 875 S.W.2d 605, 611 (Mo. Ct. App. S.D. 1994).

The parties' course of dealing and performance established Herrmann shopped early as a $45 member until July 5, 2019 notwithstanding the Advertising Circular. *Complaint*, ¶¶ 13 – 15.  And not just Herrmann:  other members were told they had to upgrade to check out before regular store hours in July 2019, further evidencing the policy change occurred in mid-2019 rather than early 2018.  *Id.* ¶ 15.

4.   The Amendment Without Notice Provision is Inapplicable.

Defendant incorrectly contends the 2019 Terms and Conditions allowed an amendment without notice barring Herrmann's claim.  The Advertising Circular was *not* an amendment – it is dated *before* Herrmann renewed in February 2019.  Yet the 2019 Terms and Conditions do not reference its terms.  The record contains no evidence of subsequent amendment to the 2019 Terms and Conditions until the changes allegedly effective after February 1, 2020.  Regardless, adhesive unilateral amendments without

notice are unenforceable. *See Patrick v. Altria Group Distribution*, 570 S.W.3d 138, 145 (Mo. Ct. App. W.D. 2019) (power to amend unilaterally made agreement illusory); *Frye v. Speedway Chevrolet Cadillac*, 321 S.W.3d 249, 443 (Mo. Ct. App. W.D. 2010) (same).

The frequent flyer cases of *Hammarquist v. United Cont'l Holdings, Inc.*, 809 F.3d 946 (7th Cir. 2016), and *Lagen v. United Cont'l Holdings, Inc.*, 774 F.3d 1124 (7th Cir. 2015), differ.  The *Hammarquist* terms provided the specific benefits at issue could be altered, whereas the 2019 Terms and Conditions fail to reference early shopping benefits much less specifically allow for their amendment.  *See* 809 F.3d at 948.  *Lagen* turned on Airline Deregulation Act preemption of state consumer laws.  *See* 774 F.3d 1128.  Another distinction applies:  the plaintiffs in *Hammarquist* and *Lagen* had the chance to take discovery.  Those rulings were decided by summary judgment, not dismissal motions or motions converted from the latter to the former.  *See Hammarquist, v. United Cont'l Holdings, Inc.*, 2015 WL 1343823, *1 (N.D. Ill., Mar. 20, 2015); *Lagen v. United Cont'l Holdings, Inc.*, 2014 WL 258756, *1 (N.D. Ill. Jan. 23, 2014).  The same holds for other cases Defendant cites.  *See Anderson v. Alpha Portland Indus., Inc.*, 836 F.2d 1512, 1515 (8th Cir. 1988) (case tried after dismissal was reversed); *In re Unisys Corp. Retiree Med. Ben. ERISA Litig.*, 58 F.3d 896, 899 (3d Cir. 1995) (summary judgment motion).

The dismissal cases Defendant cites also differ.  *Karmilowicz v. Hartford Finan. Svcs. Group, Inc*., 494 Fed Appx. 153 (2d Cir. 2012), was an employment case turning on a parole evidence issue.  And in *Cook v. Gen. Nutrition Corp.*, 2017 WL 4340664 (W.D. Pa. Sept. 29, 2017), the vendor changed membership benefits *after* issuing terms allowing amendment without notice.  Events here occurred in the reverse sequence:  the February

2018 Circular was followed by Plaintiff's renewal under the 2019 Terms and Conditions. Course of dealing evidence absent in *Cook* is also present here.

### B.   Missouri Recognizes Breach of the Implied Covenant of Good Faith and Fair Dealing as a Distinct Cause of Action.

Contrary to Defendant's assertion, Missouri recognizes breach of the implied covenant of good faith and fair dealing as a cause of action.  *See Bishop & Assoc., LLC v. Ameren Corp.*, 520 S.W.3d 463, 471 – 472 (Mo. banc 2017).  Defendant's cases merely articulate the bounds of an implied covenant claim under Missouri law, they do not hold that no such cause exists.  Defendant makes no other argument to support dismissal.

Defendant accurately notes Arkansas law does not recognize breach of the duty of good faith and fair dealing as a cause of action separate from breach of contract.

### C.   The Economic Loss Doctrine does not Apply.

The economic loss doctrine does not apply because the ability to shop before 9:00 a.m. is, at most, a service and not a good.  Herrmann alleges no product defect and makes no UCC claim.  She simply alleges Defendant agreed to allow her to shop before 9:00 a.m. in exchange for $45, then later insisted she pay more instead and finally allowed all its members to shop early regardless of how much they paid.  *Complaint*, ¶¶ 12 – 18.

"The economic loss doctrine prohibits a buyer of goods from seeking to recover in tort for economic losses that are contractual in nature."  *Dannix Painting, LLC v. Sherwin-Williams Co.*, 732 F.3d 902, 906 (8th Cir. 2013) (quotation omitted) (emphasis added) (doctrine barred misrepresentation claim for defective paint).  "[D]istrict courts in Missouri have noted that the economic loss doctrine originated in cases arising under the

Uniform Commercial Code ("UCC"), making it inapplicable to contracts for services . . . ."  *Heartland Medical, LLC v. Express Scripts, Inc.*, 2018 WL 4216669, *2 (E.D. Mo. Sept. 5, 2018); *see also MEA Finan. Ent., LLC v. Fiserv Solutions, Inc.*, 2013 WL 12155467, *3 (W.D. Mo. Oct. 16, 2013) ("Because this case involves a contract for services that does not fall under the UCC, the public policy reasons for applying the economic loss doctrine to product defect claims are not applicable here.").

The economic loss doctrine also ought not be applied at this early stage because the parties dispute contract terms.  *See Nestle Purina Petcare Co. v. Blue Buffalo Co. Ltd.*, 129 F.Supp.3d 787 (E.D. Mo. 2015).  The parties in *Nestle* disputed "the enforceability and scope" of their contract, precluding dismissal of tort claims.  *Id.* at 792. Noting the doctrine might ultimately bar the claims before it, the court reasoned that "a threshold issue in any analysis concerning the economic loss doctrine is . . . what the contract terms provide," so Rule 12(b)(6) dismissal was inappropriate.  *Id.*

Cases Defendant cites, unlike this case, all involved damage to products or failure to provide the use of tangible products.  *Bruce Martin Construction, Inc. v. CTB, Inc.*, 735 F.3d 750 (8th Cir. 2013) (power sweeps); *OS33 v. Centurylink Communications, L.L.C.*, 350 F. Supp.3d 807 (E.D. Mo. 2018) (use of cloud computers); *Johnsen v. Honeywell Int'l Inc.*, 2015 WL 631361 (E.D. Mo. Feb. 12, 2015) (humidifiers).

### D.      Herrmann States Claims for Fraud and Negligent Misrepresentation.

1.      Herrmann Alleges Relevant Statements were False when Made.

Herrmann alleges the Defendant's agent's representations – that she had to upgrade to check out early when she had been doing it for years – were false when made.

*Complaint*, ¶¶ 54 – 55, 63 – 64, 72 – 73.  Defendant advocates a judgment on the merits that those representations were true based on evidence it attaches.  Doc. 6 at 11.

Defendant's argument depends on the Court finding, as a matter of law, that Herrmann needed to pay more to shop early.  Disputed fact issues exist as to the terms of Herrmann's 2019 renewal and therefore the falsity of Defendant's representations.  It is premature to render a judicial determination as to the truth of representations made about disputed contract terms, especially given that Plaintiff renewed 2019 Terms and Conditions omitting the terms in the Advertising Circular.  *See* Doc. 6-4, Ex. C.

Defendant improperly relies on *OmegaGenesis Corp. v. Mayo Found. for Med. Educ. & Research*, 851 F.3d 800, 804 – 805 (8th Cir. 2017).  Neither party to the contract in *OmegaGenesis* disputed its terms, whereas a dispute exists here.  Defendant's reference to its current website is irrelevant as the Complaint concerns what the terms of membership were between February 2, 2019 and February 1, 2020, not presently.  Regardless of what Defendant claims its policy provides, Herrmann alleges Defendant did not enforce its policy restricting early shopping to Plus members anyway.  *Complaint*, ¶ 18.  Defendant's assertion that the allegations in ¶ 19 of the Complaint are false is immaterial:  those allegations are not essential to Herrmann's misrepresentation claims.

2.    Herrmann Pleads Fraudulent Intent.

Herrmann alleges Defendant's agents "knew the representation . . . was false when made . . ." and "intended that their representation be acted upon . . . ."  *Id*., ¶¶ 57 – 58, 65 – 66.  Coupled with the assertion that membership "allowed members to shop before regular shopping hours," Plaintiff sufficiently alleges fraudulent intent.  *Id*., ¶¶ 12, 14.

17

Defendant relies on inapplicable cases.  The pro se plaintiff in *Topchian* failed to allege the defendant knew "his representation was false or that he was reckless as to whether it was false." *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 853 (8th Cir. 2014).  Herrmann makes those allegations. *Complaint*, ¶¶ 57 – 58, 65 – 66. Although earlier cases include the "with the purpose of deceiving" verbiage Defendant relies on, more recent precedent eliminates it. *Compare Trimble v. Pracna*, 167 S.W.3d 706, 712 n. 5 (Mo. banc 2005); *with Trotter's Corp. v. Ringleader Restaurants, Inc.*, 929 S.W.2d 935, 939 (Mo. Ct. App. E.D. 1996), *citing ITT Comm. Finance Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371, 386 (Mo. banc 1993).

The same analysis holds for Herrmann's negligent misrepresentation claim. *See Complaint*, ¶¶ 12, 14, 73 – 74.

### E.    Herrmann Alleges an Unfair Practice.

Herrmann's Missouri Merchandising Practices Act ("MMPA") claims extend beyond her contract and misrepresentation claims.  She alleges Defendant violated 15 CSR 60-8.040(1) (duty of good faith), 60-8.050(1) (duress), 60-8.060(1) (unsolicited merchandise), 60-8.070(1) (unilateral breach of contract) and 60-8.080 (unconscionable practices), and the MMPA itself. *Id.* ¶¶ 77 – 82.  Defendant fails to address the foregoing theories and cites no authority other than the MMPA itself and a boilerplate case.

The allegations support claims for violation of the duty of good faith in performance of Hermann's February 2, 2019 membership renewal.  Defendant unilaterally withdrew early shopping benefits despite the parties' course of dealing. *Id.*, ¶¶ 14, 50, 77.  Herrmann also alleges violation of the duty of good faith in the solicitation

of her upgrade to Plus Membership, because she only upgraded to check out during early shopping hours, but Defendant let all members shop early regardless of their level shortly thereafter.  *Id.* ¶¶ 15 – 18, 50, 77.  Stopping her in the chek-out line and insisting she upgrade in order to check out constituted duress.  *Id.* ¶ 15.  Herrmann did not solicit or order a Plus Membership, but Defendant coercively charged her for one anyway.  *Id.* ¶ 17.  Defendant's terms and conditions were also unconscionable.

### F.    The Limitation on Damages in Defendant's February 1, 2020 Terms and Conditions do not Bind Herrmann.

Defendant improperly attempts to enforce damage limitation terms that were not in force during the class period and were rejected by Herrmann.  Doc. 6 at 14 – 15.  As set forth in § I(A) above, the version of the terms Defendant relies on did not become effective until <u>after</u> February 1, 2020, the last day of the class period, and Herrmann specifically objected and allowed her membership to lapse.  *See* Doc. 6-5, Ex. D, at 21; Doc. 6-6, Ex. E; *Herrmann Dec*., ¶¶ 2, 6 – 9.  Those terms do not bind Herrmann.

The plaintiffs in the cases Defendant cites all read the damages limitation terms and then physically signed the contract.  *See Haines v. St. Charles Speedway, Inc.*, 874 F.2d 572, 573 (8th Cir. 1989) (plaintiff signed without reading); *Saey v. Xerox Corp.*, 31 F. Supp. 2d 692, 701 (E.D. Mo. 1998) (plaintiffs read and signed); *Hill v. Lincoln Property Co.*, 2011 WL 65929 at *5 – 6 (E.D. Mo. Jan. 10, 2011) (plaintiff read and signed).  Herrmann had no such opportunity, as the language Defendant relies upon was not presented to her when she renewed on February 2, 2019 and did not even appear anywhere until Defendant placed it on its website effective after February 1, 2020.  *See*

Doc. 6-5, Ex. D, at 21; Doc. 6-6, Ex. E.  Herrmann never signed an agreement limiting

damages and never saw the language.  *Herrmann Dec*., ¶ 4.

Even had Herrmann agreed to the damage limitation provision, it is

unconscionable.  The procedural unconscionability analysis follows that set forth in

§ I(B)(2)(a) above.  Contractual damage limitations may be found substantively

unconscionable under Missouri law.  *See Oldham's Farm Sausage Co. v. Salco, Inc.*, 633

S.W.2d 177, 182 – 183 (Mo. Ct. App. W.D. 1982).  The state court opinion relied on in

*Saey* involved two commercial entities, not a consumer, and ought not be read as holding

damages limitation provisions categorically not unconscionable.  *See World Enterprises,*

*Inc. v. Midcoast Aviation Servs., Inc.*, 713 S.W.2d 606, 611 (Mo. Ct. App. E.D. 1986).

### G.     This Court has Personal Jurisdiction Over Sam's Club for a Nation-Wide Class Action.

This Court possesses personal jurisdiction over Sam's Club for the claims of out-

of-state putative class members.  The case Defendant relies upon "neither reached nor

resolved the question whether, in a Rule 23 class action, each unnamed member of the

class must separately establish personal jurisdiction over a defendant."  *Mussat v. Iqvia,*

*Inc.*, 953 F.3d 441, 447 (7th Cir. 2020), *citing Bristol-Meyers Squibb Co. v. Super. Ct. of*

*Cal.*, 137 S.Ct. 1773, 1783 – 84 (2017).

This Court addressed the question in *In re Dicamba Herbicides Litigation*, 359 F.

Supp.3d 711 (E.D. Mo. 2019).  Since then, at least two federal circuits have held putative

class members need not establish general or specific personal jurisdiction.  *See Mussat*,

953 F.3d at 447; *Molock v. Whole Foods Market Group, Inc.*, 952 F.3d 293, 297 (D.C.

Cir. 2020).  The rationale is simple: "putative class members . . . are *always* treated as nonparties."  *Molock* 952 F.3d at 297 (emphasis in original), *citing Smith v. Bayer Corp*., 564 U.S. 299, 318 (2011).  "Putative class members become parties to an action – and thus subject to dismissal – only after class certification."  *Id.* at 298 (citation omitted).  "It is class certification that brings unnamed class members into the action and triggers due process limitations on a court's exercise of personal jurisdiction over their claims."  *Id.*; *see also White v. Steak N. Shake Inc.*, 2020 WL 1703938, *4 (E.D. Mo. Apr. 8, 2020); *Krumm v. Kittrich Corp.*, 2019 WL 6876059, *4 (E.D. Mo. Dec. 17, 2019).

No Supreme Court decision or federal law restricts putative nationwide class cases against a corporate defendant to its state of incorporation.  With 600 locations in 46 states and a common membership policy regarding early shopping hours for $45 members, the due process clause ought not be interpreted to restrict national class actions against Defendant to Arkansas.  *See Complaint* ¶ 5.  Alternatively, Defendants' 18 Missouri locations provide the necessary "connection between the forum state and the specific claims at issue."  *Bristol-Meyers*, 137 S.Ct. at 1776; *see Complaint* ¶ 5.

## CONCLUSION

The Court should deny Defendant's motion.  Should the Court grant Defendant's motion to dismiss in whole or in part, Herrmann requests such dismissal be without prejudice to her ability to file an amended complaint.

21

Respectfully submitted,

ONDERLAW LLC


By:   /s/ W. Wylie Blair
    James G. Onder, # 38049MO
    onder@onderlaw.com
    W. Wylie Blair, # 58196MO
    blair@onderlaw.com
    Martin L. Daesch # 40494MO
    daesch@onderlaw.com
    Lawanna S. Wichmann, # 53999MO
    wichmann@onderlaw.com
    190 East Lockwood
    St. Louis, MO  63119
    Telephone:  (314) 963-9000
    Facsimile:  (314) 963-1700

*Attorneys for Plaintiff*

## **<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on the 6th day of July, 2020 the foregoing

was filed electronically via the ECF / CM system with the Clerk of the Court for purposes

of serving a Notice of Electronic Filing upon all counsel of record via electronic mail.


           /s/ W. Wylie Blair