UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| VIRGINIA HERRMANN, | ) | |
| *individually and on behalf of all others* | ) | |
| *similarly situated*, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:20-cv-00706 |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| SAM'S EAST, INC. d/b/a SAM'S CLUB | ) | |
| #6474, | ) | |
| | ) | |
| Defendant. | | |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO
COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS
<u>PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 1

I.      THE COURT SHOULD REFER THE CASE TO ARBITRATION. ............................... 1

      A.      Plaintiff Is Bound by the Arbitration Provision She Agreed to by Continuing Her Membership through Its Effective Date. ........................................................... 2

      B.      The Arbitration Agreement Is Not Unconscionable. ............................................. 5

      C.      The Modification Provision Does Not Invalidate the Agreement. ......................... 6

II.     ALTERNATIVELY, THE COURT SHOULD DISMISS THE PETITION. ................... 7

      A.      Plaintiff's Contract Claims Fail for Two Separate Reasons. ................................. 7

            1.      Plaintiff's Contract Claims Fail Because Her 2019 Club Membership Agreement Did Not Grant Her Early Shopping Privileges. ...................... 8

                  a.      Because the Membership Offer Reflected in the Membership Brochure is Part of the Parties' Agreement, It is Embraced by the Pleadings and Can Be Considered. ................................................ 9

                  b.      The 2019 Terms & Conditions Do Not Negate or Supersede the Membership Brochure. .................................................................. 12

                  c.      Alleged Course of Dealing Did Not Amend the Agreement or Waive Sam's Club's Right to Enforce Its Terms. ...................... 13

            2.      Even if Plaintiff's Membership Had Granted Her Early Shopping Privileges, Her Contract Claims Would Be Barred by the Amendment Provision. .............................................................................................. 14

            3.      Plaintiff's Claim for Breach of the Duty of Good Faith Fails Because Sam's Club Did Not Breach Any Contract. .............................................. 17

      B.      Plaintiff's Tort and Statutory Claims Also Fail for Several Reasons. .................. 18

            1.      The Economic Loss Doctrine Bars Plaintiff's Tort Claims. ..................... 18

            2.      The Petition Also Fails to State a Claim for Fraudulent or Negligent Misrepresentation or Fraudulent Inducement. ........................................ 19

i

a.    Plaintiff Does Not—And Cannot—Plead That the Cashier's Statement Was False When Made.................................................... 19

b.    Plaintiff's Fraud Claims Also Fail because the Petition Does Not Adequately Allege Fraudulent Intent. ...................................... 21

3.    Plaintiff Fails to State a Claim Under the MMPA. ................................ 22

III.   PLAINTIFF'S REQUEST FOR DAMAGES NOT ALLOWED BY HER MEMBERSHIP AGREEMENT SHOULD BE STRICKEN. .......................................... 23

IV.   THIS COURT LACKS JURISDICTION OVER OUT-OF-STATE PUTATIVE CLASS MEMBERS' CLAIMS AGAINST SAM'S CLUB............................................. 24

CONCLUSION............................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ............................................................................. 20, 21

*Asmus v. Pac. Bell,*
  999 P.2d 71 (Cal. 2000) ................................................................................. 7

*AT&T Mobility LLC v. Concepcion,*
  563 U.S. 333 (2011) .................................................................................... 5, 6

*Bell-Sparrow v. SFG\*Proschoicebeauty,*
  2019 WL 1201835 (N.D. Cal. Mar. 14, 2019) ................................................ 5

*Bishop & Assocs., LLC v. Ameren Corp.,*
  520 S.W.3d 463 (Mo. 2017) ......................................................................... 17

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal.,*
  137 S. Ct. 1773 (2017) ............................................................................ 24, 25

*Brown v La.-Pac. Corp.,*
  820 F.3d 339 (8th Cir. 2016) ....................................................................... 24

*Brunsman v. DeKalb Swine Breeders, Inc.,*
  952 F. Supp. 628 (N.D. Iowa 1996) ............................................................. 24

*Bruster v. Uber Techs., Inc.,*
  188 F. Supp. 3d 658 (N.D. Ohio 2016) .......................................................... 4

*BV Capital, LLC v. Hughes,*
  474 S.W.3d 592 (Mo. App. 2015) .................................................................. 3

*Callahan v. Wells Fargo & Co.,*
  747 F. Supp. 2d 247 (D. Mass. 2010) .......................................................... 12

*Chochorowski v. Home Depot U.S.A.,*
  404 S.W.3d 220 (Mo. 2013) ......................................................................... 10

*Comprehensive Care Corp. v. RehabCare Corp.,*
  98 F.3d 1063 (8th Cir. 1996) ........................................................................ 17

*Conway v. CitiMortgage, Inc.*,
    438 S.W.3d 410 (Mo. 2014)..........................................................................22

*Cook v. Gen. Nutrition Corp.*,
    2017 WL 4340664 (W.D. Pa. Sept. 29, 2017) ..............................................16

*Country Corner Food & Drug, Inc. v. First State Bank & Tr. Co.*,
    966 S.W.2d 894 (Ark. 1998) .........................................................................20

*Cystic Fibrosis Pharmacy, Inc. v. Express Scripts, Inc.*,
    2018 WL 497409 (E.D. Mo. Jan. 22, 2018)...........................................13, 14

*Dannix Painting, LLC v. Sherwin-Williams Co.*,
    732 F.3d 902 (8th Cir. 2013) .........................................................................19

*Daugherty v. Experian Info. Sols., Inc.*,
    847 F. Supp. 2d 1189 (N.D. Cal. 2012) ..........................................................4

*Davis v. HSBC Bank Nevada, N.A.*,
    691 F.3d 1152 (9th Cir. 2012) .......................................................................12

*Dittmer Props., LP v. Fed. Deposit Ins. Corp.*,
    708 F.3d 1011 (8th Cir. 2013) .......................................................................12

*Doe v. SexSearch.com*,
    551 F.3d 412 (6th Cir. 2008)..........................................................................23

*Dorward v. Macy's Inc.*,
    2011 WL 2893118 (M.D. Fla. July 20, 2011)..................................................2

*El Dorado Ice & Planing Mill Co. v. Kinard*,
    131 S.W. 460 (Ark. 1910) ..............................................................................15

*Erickson v. Pardus*,
    551 U.S. 89 (2007) .........................................................................................21

*Farrow Rd. Dental Grp., P.A. v. AT&T Corp.*,
    2017 WL 4216158 (D.S.C. Sept. 22, 2017) .....................................................3

*Flynn v. CTB, Inc.*,
    2015 WL 5692299 (E.D. Mo. Sept. 28, 2015)................................................19

*Fremeau v. Credit One Bank, N.A.*,
    2020 WL 201046 (E.D. Va. Jan. 10, 2020).......................................................4

*Frye v. Speedway Chevrolet Cadillac*,
   321 S.W.3d 429 (Mo. App. 2010)................................................................15, 16

*Gilmer v. Interstate/Johnson Lane Corp.*,
   500 U.S. 20 (1991) ...............................................................................................5

*Green Tree Fin. Corp.-Ala. v. Randolph*,
   531 U.S. 79 (2000) ...............................................................................................1

*Hammarquist v. United Cont'l Holdings, Inc.*,
   809 F.3d 946 (7th Cir. 2016)..............................................................................16

*Harper v. Charter Commc'ns, LLC*,
   2019 WL 6918280 (E.D. Cal. Dec. 19, 2019)......................................................4

*Heartland Medical, LLC v. Express Scripts, Inc.*,
   2018 WL 4216669 (E.D. Mo. Sept. 5, 2018).....................................................18

*Hillcrest Inv. Co. v. United States*,
   55 F. Supp. 147 (W.D. Mo. 1944) .....................................................................10

*Howe v. Samsung Elecs. Am., Inc.*,
   2018 WL 2212982 (N.D. Fla. Jan. 5, 2018).......................................................25

*In re Dental Supplies Antitrust Litig.*,
   2017 WL 4217115 (E.D.N.Y. Sept. 20, 2017)...................................................25

*In re Dicamba Herbicides Litig.*,
   359 F. Supp. 3d 711 (E.D. Mo. 2019)...........................................................24, 25

*In re Double G Trucking of Arklatex, Inc.*,
   432 B.R. 789 (Bankr. W.D. Ark. 2010) ............................................................13

*In re H&R Block IRS Form 8863 Litig.*,
   2014 WL 3401010 (W.D. Mo. July 11, 2014) ....................................................4

*In re Yellowstone Mountain Club, LLC*,
   469 F. App'x 584 (9th Cir. 2012) ......................................................................24

*Inspired Pharma Sols., LLC v. 5mRx LLC*,
   2018 WL 659205 (E.D. Mo. Feb. 1, 2018)........................................................18

*Lee v. Burlington Coat Factory of Mo., LLC*,
   2018 WL 1410235 (E.D. Mo. Mar 21, 2018) ......................................................2

*Lindemann v. Eli Lilly & Co.*,
816 F.2d 199 (5th Cir. 1987) ........................................................................ 24

*Maclin v. Reliable Reports of Tex., Inc.*,
314 F. Supp. 3d 845 (N.D. Ohio 2018) ........................................................ 25

*Manigault v. Macy's East, LLC*,
318 F. App'x 6 (2d Cir. 2009) ......................................................................... 4

*Mea Fin. Enters., LLC v. Fiserv Sols., Inc.*,
2013 WL 12155467 (W.D. Mo. Oct. 16, 2013) ............................................ 19

*Missouri Farmers Ass'n, Inc. v. Barry*,
710 S.W.2d 923 (Mo. App. 1986) ................................................................. 11

*Mohamed v. Uber Techs., Inc.*,
848 F.3d 1201 (9th Cir. 2016) ......................................................................... 5

*Molock v. Whole Foods Mkt. Grp., Inc.*,
952 F.3d 293 (D.C. Cir. 2020) ................................................................. 24, 25

*Mussat v. Iqvia, Inc.*,
953 F.3d 441 (7th Cir. 2020) .................................................................... 24, 25

*NTD I, LLC v. Alliant Asset Mgmt. Co.*,
2017 WL 605324 (E.D. Mo. Feb. 15, 2017) ................................................. 10

*OS33 v. CenturyLink Commc'ns, LLC*,
350 F. Supp. 3d 807 (E.D. Mo. 2018) ........................................................... 18

*Patrick v. Altria Grp. Distrib. Co.*,
570 S.W.3d 138 (Mo. App. 2019) ................................................................. 15

*Ray v. Am. Airlines, Inc.*,
2008 WL 3992644 (W.D. Ark. Aug. 22, 2008) ............................................ 17

*Rockport Pharmacy, Inc. v. Digital Simplistics, Inc.*,
53 F.3d 195 (8th Cir. 1995) ..................................................................... 18, 19

*S R Distrib., LLC v. Pepperidge Farm, Inc.*,
2019 WL 5394501 (E.D. Mo. Oct. 22, 2019) ............................................... 17

*Shockley v. PrimeLending*,
929 F.3d 1012 (8th Cir. 2019) ................................................................... 9, 10

*South Cty., Inc. v. First W. Loan Co.*,
    871 S.W.2d 325 (Ark. 1994) ...................................................................... 21

*Spratley v. FCA US LLC*,
    2017 WL 4023348 (N.D.N.Y. Sept. 12, 2017) ............................................ 25

*St. Louis Hous. Auth. ex rel. Jamison Elec., LLC v. Hankins Constr. Co.*,
    2013 WL 3802523 (E.D. Mo. July 22, 2013) .............................................. 11

*Stern v. HRB Digital, LLC*,
    2013 WL 12145014 (W.D. Mo. Aug. 12, 2013) ............................................ 4

*Taggart v. Sch. Dist. No. 52, Carroll Cty.*,
    339 Mo. 223 (1936) ...................................................................................... 15

*Tinder v. Pinkerton Sec.*,
    305 F.3d 728 (7th Cir. 2002) ......................................................................... 4

*Topchian v. JPMorgan Chase Bank, N.A.*,
    760 F.3d 843 (8th Cir. 2014) ........................................................................ 21

*Van Cleve v. City of N. Little Rock*,
    2012 WL 6569282 (Ark. App. Dec. 12, 2012) ............................................ 15

*Wenokur v. AXA Equitable Life Ins. Co.*,
    2017 WL 4357916 n.4 (D. Ariz. Oct. 2, 2017) ........................................... 25

*Zean v. Fairview Health Servs.*,
    858 F.3d 520 (8th Cir. 2017) ........................................................ 9, 11, 12, 20

**Statutes**

9 U.S.C. § 3 .......................................................................................................... 2

Ark. Stat. Ann. § 4-2-719 .................................................................................. 24

R.S. Mo. § 400.2-719 ......................................................................................... 24

**Rules**

Fed. R. Evid. 901 ............................................................................................... 12

**Other Authorities**

Restatement (First) of Contracts § 492 (1932) .................................................. 22

## INTRODUCTION

Plaintiff claims she filed this putative class action lawsuit to recover $34.35 (a *partial refund* of the amount paid for her membership) from Sam's Club for the alleged breach of her membership agreement.  Pl.'s Brief in Opp. ("Opp.") at 8.  Yet, under the agreement: (a) Plaintiff could have received a *full refund* of the amount paid for her membership at any time; (b) disputes must be resolved in individual binding arbitration; and (c) Plaintiff was not granted the early shopping privileges she claims Sam's Club wrongfully denied her.

Plaintiff asks the Court to excuse her from the arbitration clause in her membership agreement on the ground that she did not read it.  Plaintiff also claims the Court cannot consider the terms of the membership offer she accepted when she purchased her $45 Sam's Club membership in February 2019.  In support, Plaintiff states that she is not certain she saw the offer and—as it contradicts her allegations—there is a purported dispute as to contract terms.  In fact, Plaintiff's failure to read the arbitration clause does not excuse her from complying with it.  And courts must dismiss, not grant discovery, where the plain terms of the actual contract contradict the allegations of the complaint.  This case is frivolous and should be referred to arbitration or dismissed.

## ARGUMENT

## I.      THE COURT SHOULD REFER THE CASE TO ARBITRATION.

The party resisting arbitration has the burden of showing the arbitration agreement is invalid.  *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000).  Because Plaintiff has not met that burden, the Court should refer Plaintiff's individual claims to

arbitration and dismiss or stay these proceedings until the arbitration is concluded.  9
U.S.C. § 3.

> ### A.    Plaintiff Is Bound by the Arbitration Provision She Agreed to by Continuing Her Membership through Its Effective Date.

Plaintiff attempts to avoid arbitration by claiming she is not bound by the 2020
Terms & Conditions (ECF # 6-6), which contain the arbitration provision.  First, Plaintiff
incorrectly argues that she did not consent to the new Terms & Conditions by continuing
her membership beyond their effective date.  The 2020 Terms & Conditions took effect
on February 1, 2020.  *See* ECF # 6-1 at ¶ 7.  Plaintiff was advised on at least two
occasions that they would govern her membership starting on that date if she did not
cancel her membership before then.  *See* ECF # 6-5 at 21 (paper mailing sent to Plaintiff
between January 22 and January 28, 2020 advising her, under the heading "**Important
Notice.   Please Read.**," that she would be bound to new Terms & Conditions that
"include a class-action waiver and mandatory arbitration provision" if she continued her
membership beyond the effective date); ECF # 11-2 (subsequent email sent to Plaintiff on
February 1, 2020 providing same notice).

Plaintiff did not cancel her membership prior to the effective date of the 2020
Terms & Conditions, and is therefore bound by the arbitration provision.  "[A] party may
manifest assent to an agreement to arbitrate by failing to opt out of the agreement within
a specified time."  *Dorward v. Macy's Inc*., 2011 WL 2893118, at *10 (M.D. Fla. July
20, 2011) (collecting cases); *see also Lee v. Burlington Coat Factory of Mo., LLC*, 2018
WL 1410235, at *4 (E.D. Mo. Mar 21, 2018) ("Plaintiff accepted the offer to enter the

Arbitration Agreement by failing to timely opt out.") (collecting cases).  Plaintiff's failure to cancel, following notice that cancellation was required, is a legally sufficient manifestation of assent to the new Terms & Conditions.

Plaintiff concedes that she purchased a 12-month membership on February 2, 2019.  That membership continued through February 2, 2020.  Yet, Plaintiff inexplicably argues that she did not maintain her membership past February 1, 2020.  Opp. at 5 (arguing that "Herrmann's membership expired before the agreement became effective").  As support, Plaintiff notes that she "declined to participate in Defendant's 'Auto Renew Program' and never renewed subsequent to February 2, 2019 at a store or on-line."  Opp. at 3-4.  But Plaintiff was not required to renew after February 2 in order to be bound by the Terms & Conditions that became effective on February 1.  To avoid the new terms, Plaintiff needed to terminate her membership (and be given a full refund) prior to (or at least on) February 1, 2020.[1]  Plaintiff failed to do so.

Plaintiff next argues that she should be excused from the arbitration agreement on the ground that she "do[es] not recall receiving or seeing the document" mailed to her in January advising her of the updated Terms & Conditions.  ECF # 11-1 (Herrmann Decl.) ¶ 4; Opp. at 4.  But mailing creates a presumption of receipt.  *BV Capital, LLC v. Hughes*, 474 S.W.3d 592, 597 (Mo. App. 2015) ("There is a presumption that a letter duly mailed has been received by the addressee."); *see also Farrow Rd. Dental Grp., P.A. v. AT&T Corp.*, 2017 WL 4216158, at *3 (D.S.C. Sept. 22, 2017) (mailing notice of agreement to

---

[1]  Plaintiff concedes that she needed to cancel her membership at least by midnight February 1, 2020 if she wanted to reject the new terms.  Opp. at 8.

arbitrate with notice that plaintiff must call and terminate to avoid terms was binding). And Plaintiff did not have to read the mailed document for a finding of consent.  *See, e.g.*, *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735-36 (7th Cir. 2002); *Manigault v. Macy's East, LLC*, 318 F. App'x 6, 8 (2d Cir. 2009); *Harper v. Charter Commc'ns, LLC*, 2019 WL 6918280, at *4 (E.D. Cal. Dec. 19, 2019) (plaintiff was bound by arbitration agreement sent to him, despite claim that he lacked notice of it).

Finally, Plaintiff claims she rejected the 2020 Terms & Conditions, pointing to an email she sent to Sam's Club purporting to reject the new terms *after the date for rejection had passed* and *after* her membership had expired.  Such untimely notice of rejection is legally ineffective. *See, e.g.*, *Daugherty v. Experian Info. Sols., Inc*., 847 F. Supp. 2d 1189, 1196-97 (N.D. Cal. 2012) (attempted rejection of arbitration provision after date for rejection had passed was ineffective); *Fremeau v. Credit One Bank, N.A*., 2020 WL 201046, at *4-5 (E.D. Va. Jan. 10, 2020) (letter attempting opt-out of arbitration provision after account was closed was ineffective); *Bruster v. Uber Techs., Inc.*, 188 F. Supp. 3d 658, 663 (N.D. Ohio 2016) (attempted opt-out of arbitration agreement after account terminated was invalid); *In re H&R Block IRS Form 8863 Litig.*, 2014 WL 3401010, at *3-4 (W.D. Mo. July 11, 2014) (plaintiff's opt out notices received 4 days and 7 days after the deadline were ineffective); *Stern v. HRB Digital, LLC*, 2013 WL 12145014, at *5-6 (W.D. Mo. Aug. 12, 2013) (attempted opt-out of arbitration agreement after deadline was ineffective). As she failed to terminate her membership prior to their effective date, Plaintiff is bound by the 2020 Terms & Conditions.

**B.      The Arbitration Agreement Is Not Unconscionable.**

Plaintiff next argues that "[e]ven if [it] had been agreed to, the arbitration clause is unconscionable."  Opp. at 5.  It is not.  Plaintiff first argues the contract is one of adhesion.  *Id.* at 6.  But "[a]n arbitration agreement is not adhesive if there is an opportunity to opt out of it."  *Mohamed v. Uber Techs., Inc*., 848 F.3d 1201, 1212 (9th Cir. 2016).   Moreover, the fact that a contract is adhesive does not make it unconscionable.  *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346-47 (2011).  Neither does inequality in the bargaining process.  *Gilmer v. Interstate/Johnson Lane Corp*., 500 U.S. 20, 33 (1991) ("[m]ere inequality in the bargaining power, however, is not a sufficient reason to hold that arbitration agreements" are not enforceable).

To support her claim of procedural unconscionability, Plaintiff says she "never had the chance to negotiate, sign, read or even know of the agreement before it purportedly became effective."  Opp. at 7.  That is simply false.  Plaintiff was given notice on more than one occasion that new Terms & Conditions with an arbitration and class waiver provision would take effect on February 1, 2020, and that Plaintiff should cancel her membership prior to the effective date if she did not agree to those terms.  *See* ECF # 6-5 (notice through paper mailing); ECF # 11-2 (email notice); ECF # 11-1 (Herrmann Decl.) ¶ 6 (acknowledging receipt of email notice).  There is no procedural unconscionability.  *See Bell-Sparrow v. SFG*Proschoicebeauty*, 2019 WL 1201835, at *6 (N.D. Cal. Mar. 14, 2019) ("[P]laintiff had a sufficiently 'meaningful choice' in creating the contract with Citibank and assented to its terms when she failed to opt out.").

Nor is the arbitration provision substantively unconscionable.  Plaintiff first argues

that "the arbitration clause is substantively unconscionable because the JAMS fee is disproportionate to the claim amount,"—*i.e.*, a refund of the price of membership.  Opp. at 8.  But Plaintiff is incorrect because the membership agreement ensures that members need not incur any expense—whether through arbitration or litigation—in order to obtain a refund of the price of membership.  ECF # 6-6 at 22 (if a member becomes dissatisfied at any time, they are entitled to a refund of the total amount paid for their membership, not just a *pro rata* amount for the remainder of the membership term).  The agreement is not substantively unconscionable; it includes an informal dispute resolution provision that is free and easy to use, and provides a full refund any time during the membership term.

Plaintiff also argues that the arbitration provision is substantively unconscionable because it allows for the possibility that the arbitrator could schedule a hearing at a location inconvenient for Plaintiff.  Opp. at 9.  In fact, the agreement states that hearings will generally be by teleconference or videoconference, and that any in person hearings "will be held at a location which is reasonably convenient to both parties with due consideration of their ability to travel and other pertinent circumstances."  ECF # 6-6 at 11, §X.B.  There is no substantive unconscionability.

### C.    The Modification Provision Does Not Invalidate the Agreement.

Plaintiff's final attempt to avoid the arbitration clause is a two-sentence argument that the unilateral modification provision makes the agreement illusory.  Opp. at 10.  It does not.  *See Concepcion*, 563 U.S. at 336 (enforcing arbitration agreement that "authorized AT&T to make unilateral amendments, which it did to the arbitration provision on several occasions").  The "fact that one party reserves the implied power to

terminate or modify a unilateral contract is not fatal to its enforcement, if the exercise of the power is subject to limitations, such as fairness and reasonable notice." *Asmus v. Pac. Bell*, 999 P.2d 71, 79 (Cal. 2000).  Here, Plaintiff retained the right to cancel her membership for a full refund.  In any event, if Plaintiff were correct that the modification provision invalidated the agreement, that alone would doom her breach of contract action, as addressed more fully below.

Plaintiff consented to arbitration by continuing her membership beyond the effective date of the 2020 Terms & Conditions, and the provision is not unconscionable. The Court should refer Plaintiff's individual claims to arbitration and dismiss this action.

## II.    ALTERNATIVELY, THE COURT SHOULD DISMISS THE PETITION.

Alternatively, the Court should dismiss Plaintiff's claims with prejudice under Rule 12(b)(6).  Plaintiff asserts that Sam's Club breached her membership agreement by withholding membership benefits that were not included in the membership she purchased.  The claim is baseless and should be dismissed.

### A.    Plaintiff's Contract Claims Fail for Two Separate Reasons.

Plaintiff's contract claims fail for two independent reasons: (1) Plaintiff sues for being denied a membership benefit that was not included in the membership she purchased; and (2) even if the benefit at issue had been included in Plaintiff's membership, Sam's Club had the contractual right to eliminate that benefit, subject to Plaintiff's right to terminate her membership and obtain a full refund if she so chose.

1.      **Plaintiff's Contract Claims Fail Because Her 2019 Club Membership Agreement Did Not Grant Her Early Shopping Privileges.**

Plaintiff's contract claims fail because the Sam's Club membership Plaintiff purchased in February 2019 did not include the early-shopping privileges she claims were wrongly revoked in July 2019. The Membership Brochure attached to the motion to dismiss (ECF # 6-3) lists the benefits offered by Sam's Club for its "Club" and "Plus" memberships in February 2019.  As it reflects, only Plus members were entitled to shop early.  *Id.*  Plus Memberships were $100.  Pet. ¶¶ 12-13.  Plaintiff purchased a $45 Club membership in February 2019.  ECF # 6-2 at 3 (receipt of purchase).  Thus, she was not entitled to early shopping privileges when she alleges those privileges were revoked.

Plaintiff does not dispute that she purchased a $45 membership in February 2019. Nor does she provide the Court with any different membership offer that purportedly included early-shopping privileges as a benefit for Club members.  Instead, Plaintiff argues that her claims should be allowed to advance, despite the fact that the Membership Brochure forecloses them, claiming that: (1) the Court cannot consider the Membership Brochure because it is not part of her membership agreement; (2) the 2019 Terms & Conditions for Sam's Club memberships somehow amended the benefits offered in the Membership Brochure; or (3) the parties' course of dealing somehow amended the terms of her membership agreement.  Opp. at 10-13.  None of these arguments succeeds.

### a. Because the Membership Offer Reflected in the Membership Brochure is Part of the Parties' Agreement, It is Embraced by the Pleadings and Can Be Considered.

The membership offer reflected in the Membership Brochure forecloses Plaintiff's claims because it demonstrates that the membership benefit she claims was wrongfully withheld was not included in the membership she purchased.   In an effort to avoid dismissal, Plaintiff argues that the Court cannot consider the Membership Brochure claiming it is not part of the parties' agreement.   Plaintiff is incorrect.   The Membership Brochure is part of the parties' agreement because it reflects the membership offer that Plaintiff accepted when she purchased her Club membership in February 2019.   *See* ECF # 6-1 ¶ 4; *Shockley v. PrimeLending*, 929 F.3d 1012, 1017 (8th Cir. 2019) ("offer and acceptance constitute mutual assent" to formation of contract).   Because the Membership Brochure is part of the parties' agreement, it is embraced by the pleadings and can be considered by the Court without converting the motion to one for summary judgment. *See Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (court may "examine the contract documents in deciding a motion to dismiss," even if "contract documents not attached to the complaint refute a breach-of-contract claim").

Plaintiff's additional arguments against consideration of the Membership Brochure are frivolous: (1) the Membership Brochure "is not a membership agreement" because "[t]here is no place for members to sign;" (2) Plaintiff "does not believe she received it;" (3) the 2019 Terms & Conditions "do not incorporate it or mention its existence;" (4) Sam's Club failed to "establish the non-existence of other versions;" and (5) Plaintiff has

not had the opportunity to test its authenticity.  Opp. at 11-12.  None of these arguments can save Plaintiff's claims.

*First,* it was not necessary for Plaintiff to sign the Membership Brochure to accept its offer of Club level membership benefits.   Plaintiff accepted the offer in the Membership Brochure when she purchased her $45 Club level membership.  *Shockley*, 929 F.3d at 1017 ("acceptance" present when offeree "signifies assent to the terms of the offer in a positive and unambiguous manner"); *Hillcrest Inv. Co. v. United States*, 55 F. Supp. 147, 149 (W.D. Mo. 1944) (assent may be shown in ways other than through signature).

*Second*, Plaintiff's claimed failure to review the terms of the membership offer she accepted when she purchased her Club membership does not mean the terms are not part of her agreement, or prevent their consideration on this motion.  *Chochorowski v. Home Depot U.S.A.*, 404 S.W.3d 220, 228 (Mo. 2013) ("A signer's failure to read or understand a contract is not, without fraud or the signer's lack of capacity to contract, a defense to the contract.").

*Third*, the Terms & Conditions need not restate the terms of the Membership Brochure for those terms to be part of the contract.  The Membership Brochure reflects the offer of membership benefits Plaintiff accepted by purchasing her membership, while the 2019 Terms & Conditions reflect the rules that "govern" that agreement.  *See* ECF # 6-4 at 7.  An agreement can be reflected in two or more separate documents.  *NTD I, LLC v. Alliant Asset Mgmt. Co.*, 2017 WL 605324, at *6 (E.D. Mo. Feb. 15, 2017) ("Under

Missouri law, a contract can consist of multiple documents.") (citing *Missouri Farmers Ass'n, Inc. v. Barry*, 710 S.W.2d 923, 926 (Mo. App. 1986)).[2]

**Fourth**, the declaration provided by Sam's Club establishes that the Membership Brochure reflects the offer terms for Sam's Club memberships at the time Plaintiff purchased her February 2019-February 2020 membership.  ECF # 6-1 ¶ 4; ECF # 6-3. Plaintiff has produced no other purported membership offer having different terms.  It is not Sam's Club's burden to additionally establish the non-existence of a purported different offer that Plaintiff has failed to identify.  *See St. Louis Hous. Auth. ex rel. Jamison Elec., LLC v. Hankins Constr. Co.*, 2013 WL 3802523, at *1 (E.D. Mo. July 22, 2013) (plaintiff's burden to plead "facts sufficient to demonstrate the existence of a valid contract and its breach").

**Finally**, Plaintiff had a full opportunity to question the brochure's authenticity in her opposition brief, but chose not to do so.  Nowhere in her brief does Plaintiff actually dispute the Membership Brochure's authenticity or claim it is not what it is represented to be in the Declaration submitted by Sam's Club.  Nor does she point to any other purported offer listing different membership benefits during the relevant period.  Thus, there is no actual dispute as to the brochure's authenticity.  *Zean*, 858 F.3d at 527 (authenticity of consent forms a "bogus issue" where plaintiff's counsel complained they "d[id] not know what" the forms were and objected to their consideration, but at no time *actually* argued that "the documents were not properly authenticated in accordance with

---

[2] The 2019 Terms & Conditions cite additional policies and terms.  ECF # 6-4 at 7 ("Certain services, programs, and promotions may be subject to additional policies and terms.  All Sam's Club members are subject to the Sam's Club Privacy Policy.").

Rule 901 of the Federal Rules of Evidence"); *see also Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160-61 (9th Cir. 2012) (statement in opposition to motion to dismiss that "[t]here is no evidence that these documents were ever reviewed by Plaintiff or made available to Plaintiff," was insufficient to challenge authenticity, and plaintiff had ample opportunity to challenge authenticity in briefing on motion to dismiss); *Callahan v. Wells Fargo & Co.*, 747 F. Supp. 2d 247, 250 (D. Mass. 2010) (briefing on motion to dismiss provides ample opportunity to dispute authenticity of documents attached to complaint).[3]

Thus, Plaintiff's argument that discovery is required because "dispute[d] issues of material fact exist concerning the terms of the parties' contract" (Opp. at 12) fails. Absent a genuine dispute as to their authenticity, a court may dismiss the plaintiff's complaint based on contract documents that contradict the allegations in the complaint without converting the motion into one for summary judgment. *Zean*, 858 F.3d at 526-27; *Dittmer Props., LP v. Fed. Deposit Ins. Corp.*, 708 F.3d 1011, 1021 (8th Cir. 2013). As the Membership Brochure is part of the parties' agreement, the Court may consider it without converting the motion into one for summary judgment.

### b.    The 2019 Terms & Conditions Do Not Negate or Supersede the Membership Brochure.

Plaintiff next asserts that the merger clause in the 2019 Terms & Conditions negated and, thus, prevents consideration of the Membership Brochure. Opp. at 12. It does not. By its plain language, the merger clause supersedes only the prior Terms & Conditions that governed Sam's Club memberships. *See* ECF # 6-4 at 12 (terms

---

[3] Sam's Club properly authenticated the membership brochure in accordance with Rule 901. *See* Doc. # 6-1 ¶ 4 (Declaration of Jeffrey Wadlin).

"constitute the entire agreement between the parties *with respect to the subject matter hereof* and supersedes and replaces all prior or contemporaneous understandings or agreements . . . regarding such subject matter").  Because the Terms & Conditions do not address membership benefits, they do not "supersede and replace" the description of those benefits in the Membership Brochure.

In any event, accepting Plaintiff's argument would defeat her claim.  The 2019 Terms & Conditions make no mention of a "Business Membership" or corresponding early shopping privileges.  In fact, they make no reference to any benefits conferred on Sam's Club members.  Thus, Plaintiff's apparent argument that the 2019 Terms & Conditions constitute the entire agreement between the parties wholly undermines her contention that she had a contractual right to shop early that was breached.

### c.    Alleged Course of Dealing Did Not Amend the Agreement or Waive Sam's Club's Right to Enforce Its Terms.

In her third and final attempt to escape the terms of the Membership Brochure, Plaintiff claims the parties' course of dealing amended the agreement.  That attempt also fails.  In both Missouri and Arkansas, a course of dealing can be "admitted only to explain or supplement the terms of an agreement . . . not to contradict the agreement terms."  *Cystic Fibrosis Pharmacy, Inc. v. Express Scripts, Inc.*, 2018 WL 497409, at *4 (E.D. Mo. Jan. 22, 2018) (quotations omitted); *In re Double G Trucking of Arklatex, Inc.*, 432 B.R. 789, 796 (Bankr. W.D. Ark. 2010).  Here, it is unambiguous that Plaintiff's Club Membership did not entitle her to early shopping privileges.  *See* ECF # 6-3.

Moreover, the 2019 Terms & Conditions require any waiver by Sam's Club to be "made in writing and signed by Sam's Club." ECF # 6-4 at 12. Thus, the parties' purported course of dealing or performance cannot modify the membership agreement to grant Plaintiff a contractual right to shop early in 2019. *See Cystic Fibrosis Pharmacy, Inc.*, 2018 WL 497409, at *4 (dismissing contract claims when evidence of prior dealings "would contradict [the parties' agreement], not explain or supplement it," and agreement stated that waiver of a breach did not constitute waiver of a subsequent breach).

In sum, the Court can consider the Membership Brochure without converting the motion to one for summary judgment because it is part of the parties' agreement and Plaintiff has not disputed its authenticity. And, because it shows that Plaintiff's Club membership did not include early-shopping privileges, her contract claims for alleged wrongful termination of that benefit fail.

### 2. Even if Plaintiff's Membership Had Granted Her Early Shopping Privileges, Her Contract Claims Would Be Barred by the Amendment Provision.

Even if Plaintiff's 2019 membership had included early-shopping privileges (it did not), the amendment provision in the 2019 Terms & Conditions (which Plaintiff concedes are part of the agreement (Opp. at 10)) would bar her claims. *See* ECF # 6-4 at 7 ("All Sam's Club rules, including these Membership Terms & Conditions, may be amended from time to time without notice."). Plaintiff's contrary arguments fail.

First, Plaintiff advances the self-defeating argument that the Membership Brochure did not amend the terms of her 2019 membership because it predated her 2019 membership purchase. Opp. at 13. But that is exactly the point made above—because

the early shopping benefit was limited to Plus members *before* Plaintiff purchased her $45 Club membership in February 2019, her February 2019-February 2020 Club membership never entitled her to early shopping privileges.

But even if Plaintiff's February 2019-February 2020 membership had included early-shopping privileges as alleged, which it did not, her claim still would fail because Sam's Club had a contractual right to eliminate the benefit (subject to Plaintiff's right to request a full refund).  Plaintiff seeks to avoid that conclusion with yet another self-defeating argument.  Specifically, she argues that the provision allowing Sam's Club to amend membership benefits renders the agreement illusory and, thus, unenforceable, citing two Missouri cases.  Opp. at 13-14.  Yet, if Plaintiff were correct, her breach of contract claims would fail for lack of an enforceable agreement.[4]

In fact, neither case Plaintiff cites supports her argument.  Instead, both cases recognize that granting one party the right to amend an agreement does not render the agreement unenforceable if, as here, the power to amend is meaningfully restricted.  *See Patrick v. Altria Grp. Distrib. Co.*, 570 S.W.3d 138, 144 (Mo. App. 2019) ("The fact that [a contracting party] has the unilateral right to amend . . .  may not render the agreement

---

[4] If the amendment provision rendered Sam's Club's promises illusory, there would be no enforceable contract between the parties.  *See Frye v. Speedway Chevrolet Cadillac*, 321 S.W.3d 429, 442 (Mo. App. 2010) (if agreement "includes language permitting one party to unilaterally modify the agreement such that the party could relieve itself of its promises, there is no meaningful mutuality at all, and the contract is illusory and unenforceable"); *Van Cleve v. City of N. Little Rock*, 2012 WL 6569282, at *2-3 (Ark. App. Dec. 12, 2012) (citing *El Dorado Ice & Planing Mill Co. v. Kinard*, 131 S.W. 460, 462 (Ark. 1910)).  That conclusion would doom Plaintiff's contract claims.  *See Taggart v. Sch. Dist. No. 52, Carroll Cty.*, 339 Mo. 223, 225 (1936) ("It is elementary that a cause of action for the breach of a contract presupposes the existence of a legally enforceable contract."); *Van Cleve*, 2012 WL 6569282, at *3.

illusory, if [that party's] power to modify the agreement is meaningfully restricted.");
*Frye*, 321 S.W.3d at 443-44 (restrictions on right to amend, such as providing recourse to
non-amending party may prevent amending party's promise from being illusory).

Here, Sam's Club's power to modify the agreement is significantly restricted.  The
agreement contains a satisfaction guarantee that permits any member to obtain a full
refund of *their entire membership fee, at any time during the membership term*, if they
become dissatisfied.  ECF # 6-4 at 8 ("100% Satisfaction Guarantee on Membership.
We'll refund in full the actual amount you paid for your current annual membership at
any time during the membership year if you aren't satisfied.").  Thus, if Sam's Club made
an unacceptable amendment, a member could demand the return of the *entire* benefit
Sam's Club had received under the contract.  Because the agreement provides recourse to
the non-amending party that restricts the right to amend, the provision allowing Sam's
Club to make changes to the membership terms does not render the agreement illusory.
Instead, the amendment provision simply ensures that Sam's Club can make changes to
its membership offer from time to time, while also ensuring that members retain the right
to reject such changes.

Courts routinely enforce similar amendment provisions in consumer membership
and rewards program agreements when dismissing breach of contract claims as a matter
of law.  *See, e.g.*, *Hammarquist v. United Cont'l Holdings, Inc*., 809 F.3d 946, 950 (7th
Cir. 2016); *Cook v. Gen. Nutrition Corp.,* 2017 WL 4340664, at *7-8 (W.D. Pa. Sept. 29,
2017) (collecting cases).  Plaintiff attempts to distinguish some of the cases Sam's Club
cites on the ground that they were decided at the summary judgment stage, not on a Rule

12(b)(6) motion to dismiss.  But Courts routinely dismiss contract claims under Rule 12(b)(6) when, as is the case here, the unambiguous terms of the parties' agreement defeats the claim.  *See, e.g.*, *S R Distrib., LLC v. Pepperidge Farm, Inc.*, 2019 WL 5394501, at *2-4 (E.D. Mo. Oct. 22, 2019); *Ray v. Am. Airlines, Inc.*, 2008 WL 3992644, at *12 (W.D. Ark. Aug. 22, 2008).

There is no dispute that the 2019 Terms & Conditions governed Plaintiff's membership agreement in July 2019.  *See* Opp. at 10.  Their amendment provision precludes a breach of contract claim based upon an alleged change in membership benefits.  Plaintiff's contract claims fail for this additional reason as well.

### 3. Plaintiff's Claim for Breach of the Duty of Good Faith Fails Because Sam's Club Did Not Breach Any Contract.

Missouri does not recognize a cause of action for breach of the duty of good faith and fair dealing that is separate from a breach of contract claim.[5]  The claim fails if the defendant did not "depriv[e] the other party of its expected benefits under the contract." *Comprehensive Care Corp. v. RehabCare Corp.*, 98 F.3d 1063, 1066 (8th Cir. 1996). The alleged duty of good faith does not "give rise to new obligations not otherwise contained in a contract's express terms." *Id.*; *see also Bishop & Assocs., LLC v. Ameren Corp.*, 520 S.W.3d 463, 471 (Mo. 2017) (claim fails where "the defendant acts in accordance with the express terms of the contract") (quotations omitted).  As Plaintiff was not entitled to the membership benefit she says was revoked, this claim fails as well.

---

[5] Plaintiff concedes that Arkansas does not recognize a claim for breach of the duty of good faith and fair dealing. *See* Opp. at 15.

**B.     Plaintiff's Tort and Statutory Claims Also Fail for Several Reasons.**

**1.     The Economic Loss Doctrine Bars Plaintiff's Tort Claims.**

Plaintiff's tort claims are barred by the economic loss doctrine.  Attempting to avoid this bar, Plaintiff contends that the doctrine does not apply to her claims because it applies only to contracts for the sale of goods and her membership agreement is for services.  *See* Opp. at 15-16.  Plaintiff is wrong on both counts.

First, the exception to the economic loss doctrine for service contracts "has only been applied to negligence claims involving defendants who have been held to a professional, rather than an ordinary, standard of care and who have provided professional services to the plaintiff."  *Rockport Pharmacy, Inc. v. Digital Simplistics, Inc.*, 53 F.3d 195, 199 (8th Cir. 1995) (applying Missouri law).  Thus, courts in this district, including this one, have applied the economic loss doctrine in the context of service contracts.  *See, e.g.*, *Inspired Pharma Sols., LLC v. 5mRx LLC*, 2018 WL 659205, at *1-3 (E.D. Mo. Feb. 1, 2018) (Limbaugh, J.) (misrepresentation claims barred because not distinct from claim for breach of contract "to provide repackaging, fulfillment, and pack and ship services of pharmaceuticals for defendant"); *OS33 v. CenturyLink Commc'ns, LLC*, 350 F. Supp. 3d 807, 810, 817 (E.D. Mo. 2018) (fraudulent misrepresentation claim barred because not distinct from breach of contract "for cloud computing, hosting, and related services").  Even in *Heartland Medical, LLC v. Express Scripts, Inc.*, a case Plaintiff cites, the court identified the relevant contract as one for

services, but nonetheless applied the doctrine to bar the plaintiff's tortious interference claim.  2018 WL 4216669, at *2-3 (E.D. Mo. Sept. 5, 2018).[6]

Second, Plaintiff's membership agreement would not fall within the service-contract exception, in any event, because it is predominately for the sale of goods, not services.  *Rockport Pharmacy*, 53 F.3d at 199 (exception did not apply because "the contract between [the parties] was not primarily for services, but rather for the sale of goods").  Sam's Club is a membership-only retail warehouse club.  Pet. ¶ 9.  As such, it is predominantly engaged in the sale of goods to its members.  Plaintiff's tort claims are barred by the economic loss doctrine.

### 2. The Petition Also Fails to State a Claim for Fraudulent or Negligent Misrepresentation or Fraudulent Inducement.

#### a. Plaintiff Does Not—And Cannot—Plead That the Cashier's Statement Was False When Made.

Plaintiff's tort claims are based on the same allegations as her contract claims and fail for the same reason.  Namely, the cashier's alleged statement that Plaintiff needed to upgrade to a Plus membership to secure early-shopping privileges was, in fact, true.  *See* ECF # 6-3 (Membership Brochure limiting early shopping privileges to Plus members);

---

[6] The other two cases Plaintiff cites do not aid her.  First, Plaintiff suggests that the Eighth Circuit held in *Dannix* that service contracts are excluded from the economic loss doctrine. But the court in *Dannix* was not presented with, and did not address, that question.  *Dannix Painting, LLC v. Sherwin-Williams Co.*, 732 F.3d 902, 905-06 (8th Cir. 2013).  Second, in *Mea Financial Enterprises*, the court simply noted that the public policy reasons for applying the economic loss doctrine to product defect claims did not apply to the service contract at issue there.  *Mea Fin. Enters., LLC v. Fiserv Sols., Inc.*, 2013 WL 12155467, at *1, *3 (W.D. Mo. Oct. 16, 2013).  The Court's actual holding—that the Missouri Supreme Court would not apply the doctrine to tortious interference or fraudulent misrepresentation claims—has been rejected by the Eighth Circuit in *Dannix* and numerous courts in this district, including this one.  *See, e.g.*, *Flynn v. CTB, Inc.*, 2015 WL 5692299, at *11-12 (E.D. Mo. Sept. 28, 2015) (Limbaugh, J.).

*Zean*, 858 F.3d at 526 (contract documents not attached to the complaint can be considered on motion to dismiss to refute claim defendant breached "statutory or common law duty").

Nor does Plaintiff even claim—as she must—that the cashier's alleged statement was, in fact, *false when made*.[7]  Instead, she alleges only that (1) on or around July 5, 2019, a Sam's Club cashier informed her that she needed to upgrade to a Plus membership if she wished to checkout during early shopping hours, Pet. ¶ 15, and (2) during a "subsequent visit" she was told that "the store was open to all members at 7:00 a.m., regardless of membership level," *id.* ¶ 18.   Plaintiff ***does not allege*** that the purported decision to allow all members to shop early was made prior to her visit on July 5.  *Id.* ¶ 19 ("Upon information and belief, at some point during 2019 Sam's [Club] . . . eliminated its restrictions on shopping hours . . . .").  Plaintiff's allegations are equally consistent with the cashier's statement being true on July 5, but Sam's Club later changing its policy prior to Plaintiff's "subsequent visit."  Thus, Plaintiff's allegations are insufficient to survive a motion to dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (quotation marks omitted).   The Court should dismiss Plaintiff's misrepresentation and fraudulent inducement claims with prejudice.

---

[7] *See* Mem. at 11; *see also Country Corner Food & Drug, Inc. v. First State Bank & Tr. Co.*, 966 S.W.2d 894, 897 (Ark. 1998).

### b. Plaintiff's Fraud Claims Also Fail because the Petition Does Not Adequately Allege Fraudulent Intent.

Plaintiff contends that her conclusory allegations that the cashier "'knew [her] representation was false when made' and 'intended that [her] representation be acted upon,'" are sufficient to plausibly allege that the cashier acted with the requisite knowledge and intent. *See* Opp. at 17 (quoting Pet. ¶¶ 57-58). They are not. The cited paragraphs merely parrot the elements of her causes of action, and are thus insufficient to satisfy the pleading standard. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Plaintiff needed to allege some "circumstances surrounding [the cashier's] statement from which [the Court] may reasonably infer that [the cashier] either knew that [her] statement was false or that [she] was reckless as to its falsity." *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 853 (8th Cir. 2014).[8] Plaintiff's fraud claims fail because she includes only conclusory allegations on this point.

Plaintiff's negligent misrepresentation claim similarly fails because Plaintiff does not allege—beyond mere conclusory allegations—that the cashier failed to exercise reasonable care. *Id.* In addition, Arkansas law does not recognize the claim. *See South Cty., Inc. v. First W. Loan Co.*, 871 S.W.2d 325, 326 (Ark. 1994).

---

[8] Plaintiff notes that the plaintiff in *Topchian* was *pro se*, but that fact only highlights the inadequacy of her pleading. Opp. at 18. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation and quotations omitted). In *Topchian*, the Eighth Circuit applied this principle and still found the *pro se* plaintiff's allegations insufficient. In other words, Plaintiff fails to meet even the more lenient pleading standard applied to litigants not represented by counsel.

### 3.    Plaintiff Fails to State a Claim Under the MMPA.

Plaintiff's MMPA claim fails because she has failed to allege an unfair or deceptive practice.  The MMPA makes unlawful any "act, use or employment by any person of any unfair or deceptive practice done in connection with the sale or advertisement of any merchandise." *Conway v. CitiMortgage, Inc.*, 438 S.W.3d 410, 414 (Mo. 2014) (quotations omitted).  The "unfair or deceptive practice[s]" Plaintiff alleges are that Sam's Club (1) terminated her Business membership in 2019, and then (2) sold her a Plus membership only to later extend early shopping privileges to all members.  Pet. ¶¶ 19, 78.  Each of these contentions is contradicted by materials embraced by the pleadings, as explained above.

Plaintiff nonetheless argues that she has adequately pleaded that Sam's Club engaged in unfair practices delineated in rules promulgated by the Missouri Attorney General to administer and enforce the MMPA: (1) violating the duty of good faith, (2) unilateral breach of contract, (3) engaging in unconscionable practices, (4) duress, and (5) collecting payment for unsolicited merchandise.  Opp. at 18.  But Plaintiff has not stated any facts plausibly alleging that Sam's Club engaged in any of these unfair practices.

First, Sam's Club did not violate its duty to act in good faith, unilaterally breach a contract, or engage in unconscionable practices.  Again, Plaintiff was not entitled to the benefits in 2019 that she alleges Sam's Club terminated.  And the Sam's Club cashier's alleged statement in July 2019 that Plaintiff needed to upgrade to a Plus Membership to checkout early was accurate.  Second, it is preposterous to argue that the cashier subjected Plaintiff to duress or sold her unsolicited merchandise. *See* Restatement (First)

of Contracts § 492 (1932) (duress means *inter alia* a "wrongful act" that "compels a manifestation of apparent assent by another . . . without his volition"); 15 CSR 60-8.060(1) (it is an "unfair practice for any seller . . . to bill, charge or attempt to collect payment from consumers[] for any merchandise *which the consumer has not ordered or solicited*") (emphasis added).   Plaintiff alleges that the cashier explained Sam's Club's policies to her, and Plaintiff then decided, under her own volition, to purchase a Plus Membership rather than wait for normal shopping hours to complete her purchase.  Pet. ¶¶ 15-17.  She does not allege duress or the collection of payment for unsolicited merchandise.  Because Plaintiff fails to allege that Sam's Club engaged in any unfair or deceptive practice, her MMPA claim should be dismissed with prejudice.

## III.  PLAINTIFF'S REQUEST FOR DAMAGES NOT ALLOWED BY HER MEMBERSHIP AGREEMENT SHOULD BE STRICKEN.

Plaintiff argues that her recoverable damages are not limited by contract because the 2020 Terms & Conditions do not apply to her membership.  Opp. at 19-20.  As shown above, they do.  But even if the 2019 Terms & Conditions applied, they also contain a Limitation of Liability provision nearly identical to the one in the 2020 Terms & Conditions.  *Compare* Doc. # 6-4 at 11, *with* Doc. # 6-6 at 10.  The Court should enforce the clause limiting damages to the value of the contract.

Plaintiff also argues that the limitation on damages is unconscionable.  Opp. at 20. It is not.  It provides for Plaintiff to obtain a complete refund of the membership price. Courts routinely enforce contractual provisions limiting damages to a refund of membership costs or the value of the contract.  *See, e.g.*, *Doe v. SexSearch.com*, 551 F.3d

412, 418-19 (6th Cir. 2008) (enforcing contract provision that limited damages to return of membership fee); *In re Yellowstone Mountain Club, LLC*, 469 F. App'x 584, 586-87 (9th Cir. 2012) (enforcing contract provision that limited damages to return of membership deposit); *Lindemann v. Eli Lilly & Co*., 816 F.2d 199, 202-04 (5th Cir. 1987) (enforcing contractual provision limiting damages to return of purchase price); *Brunsman v. DeKalb Swine Breeders, Inc.*, 952 F. Supp. 628, 634-35 (N.D. Iowa 1996) (enforcing contractual provision limiting damages to half contract price); *see also Brown v La.-Pac. Corp*., 820 F.3d 339, 355-56 (8th Cir. 2016) (enforcing contractual provision limiting damages to twice contract price).  Arkansas and Missouri both expressly authorize such limitation.  Ark. Stat. Ann. § 4-2-719; R.S. Mo. § 400.2-719.  The Court should limit Plaintiff's claim for damages consistent with her membership agreement.

## IV.   THIS COURT LACKS JURISDICTION OVER OUT-OF-STATE PUTATIVE CLASS MEMBERS' CLAIMS AGAINST SAM'S CLUB.

The Court should dismiss the class claims asserted on behalf of individuals whose cases originated outside Missouri for lack of jurisdiction.  *See In re Dicamba Herbicides Litig.*, 359 F. Supp. 3d 711, 722-24 (E.D. Mo. 2019) (Limbaugh, J.) (citing *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 137 S. Ct. 1773 (2017)).  Plaintiff cites two out-of-circuit cases for the proposition that *Bristol-Myers Squibb* does not apply in the class action context and out-of-state class members need not establish personal jurisdiction at all.  Opp. at 20-21 (citing *Mussat v. Iqvia, Inc.*, 953 F.3d 441, 447 (7th Cir. 2020) and *Molock v. Whole Foods Mkt. Grp., Inc.*, 952 F.3d 293, 297 (D.C. Cir. 2020)).  Neither supports reconsideration of this Court's prior reasoning.

First, Plaintiff misstates the holding of *Molock*, which actually holds only that application of *Bristol-Myers Squibb* prior to class certification is premature.  952 F.3d at 298.  Second, while *Mussat* does hold that unnamed class members need not establish jurisdiction, the decision and its faulty reasoning are not binding on this Court, which already rejected its conclusion as inconsistent with *Bristol-Myers Squibb*.  In *Dicamba Herbicides*, this Court acknowledged the "split of authority among the courts" on this question, but agreed with the cases holding that *Bristol-Myers Squibb* "applies with equal force in the class action context."  *See* 359 F. Supp. 3d at 723.

This Court's prior reasoning was correct.  Because due process requirements do not differ for individual cases and class actions, many federal courts correctly have held that *Bristol-Myers Squibb* applies equally to class actions.[9]  The Court should follow its correct prior ruling.  Because this court lacks personal jurisdiction over out-of-state putative class members, their claims should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should refer Plaintiff's claims to binding arbitration or, in the alternative, dismiss Plaintiff's claims with prejudice.

---

[9] *See, e.g.*, *Wenokur v. AXA Equitable Life Ins. Co.*, 2017 WL 4357916, at *4 n.4 (D. Ariz. Oct. 2, 2017); *Spratley v. FCA US LLC*, 2017 WL 4023348, at *6-8 (N.D.N.Y. Sept. 12, 2017); *In re Dental Supplies Antitrust Litig.*, 2017 WL 4217115, at *8-9 (E.D.N.Y. Sept. 20, 2017); *Maclin v. Reliable Reports of Tex., Inc.*, 314 F. Supp. 3d 845, 851 (N.D. Ohio 2018); *Howe v. Samsung Elecs. Am., Inc.*, 2018 WL 2212982, at *4 (N.D. Fla. Jan. 5, 2018).

Dated:  July 24, 2020    Respectfully submitted,

         BRYAN CAVE LEIGHTON PAISNER LLP

        By: */s/ A. Elizabeth Blackwell*
         A. Elizabeth Blackwell, #50270MO
         Darci F. Madden, #51463MO

         211 North Broadway, Suite 3600
         St. Louis, MO  63102-2750
         Telephone:  (314) 259-2000
         Facsimile:  (314) 259-2020
         liz.blackwell@bclplaw.com
         dfmadden@bclplaw.com

         *Attorneys for Defendant*

26

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 24th day of July, 2020, the foregoing was filed electronically via the ECF/CM system with the Clerk of Court which will serve Notice of Electronic Filing upon all counsel of record via electronic mail.


*/s/ A. Elizabeth Blackwell*